Statement of Facts.

## IRON CITY N. BANK v. MARTHA J. McCORD.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 2 OF ALLEGHENY COUNTY.

Argued October 28, 1890—Decided January 5, 1891.
[To be reported.]

(*a*) A depositor in a savings bank drew an order thereon payable nine
weeks from date. Upon the upper margin of the blank form used
were printed the words, "Return notice ticket with this order." On
the lower margin, below the drawer's signature, were the following
printed words: "Deposit book must be at bank before money can be
paid:"

1. There was enough on the face of the order to show that, in the com-
mercial sense, it was not a regular check and was not intended to oper-
ate as such, but was drawn on a specially deposited fund, held by the
bank subject to certain rules and regulations requiring certain things to
be done before payment of the order could be required.

2. The effect of these requirements was to render the order non-negotiable;
as it is well settled that anything written or printed on an instrument,
otherwise negotiable, prior to its issuance by the maker and tending to
restrain or qualify it, must be regarded as part of the contract intended
to be evidenced thereby.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-
COLLUM and MITCHELL, JJ.

No. 25 October Term 1890, Sup. Ct.; court below, No. 413
July Term 1888, C. P. No. 2.

To the first Monday of June, 1888, the Iron City National
Bank brought assumpsit against Martha J. McCord, upon a
check or order on the Dollar Savings Bank of Pittsburgh, a
full copy of which is given in the opinion of the Supreme
Court. The plaintiff's statement of claim, as amended, aver-
red inter alia, that the order or check sued on was made and
delivered by the defendant " for the use, enjoyment and im-
provement of her separate estate." Issue.

At the trial on November 22, 1889, the following facts were
shown:

The defendant was the wife of Dr. J. P. McCord, and the
owner of certain real estate in the city of Pittsburgh, upon

Statement of Facts.

which in the year 1887, she erected two houses.    W. J. Quinn was the contractor for the erection of the houses.    Payments had been made to him from time to time, which left a balance of $910 due upon the contract when the houses were completed. On applying to the defendant for payment of this balance, he was informed that her money was on deposit in the Dollar Savings Bank of Pittsburgh, and that by the rules of the bank nine weeks' notice of an intention to withdraw that amount was required.

The by-laws of the bank contained the following regulations respecting the withdrawal of deposits.

### ARTICLE XII.

" Sec. 6.  No money shall be drawn except on two weeks' notice, and if the sum proposed to be drawn exceed two hundred dollars, one week's further notice must be given for every additional hundred dollars or fractional part thereof ; and, for all sums over sixteen hundred dollars, four months' notice will be required.    Notice will not be received, at one time, for the drawing of more than one amount, and a second notice shall be considered as waiving any pending notice.    Interest, however, will be paid on demand.    On giving notice, the book must be left at the bank and the treasurer informed how much money is wanted ; and, if the money be not drawn within thirty days after the time for drawing has passed, the notice will be considered as withdrawn, and a new notice will be required."

" Sec. 8.  When money is to be drawn out, the book must be brought to the office to have the payment entered therein. Depositors must take out the money themselves ; except that, in case of sickness or other infirmity, or absence from the city, it may be paid to their order, properly witnessed, accompanied by the book.    Blank orders will be furnished at the office of the corporation."

Quinn brought to the defendant and her husband a blank order on the bank, and, representing that he needed his money, finally prevailed upon her to sign and give him the order in suit that he might negotiate it.    She did so, on the strength of his assurance that all bills for labor and materials that had gone into her houses were paid ; and her husband paid to Quinn in cash the remaining $10 due, over and above the amount of the order.    A withdrawal notice was given to the

Charge of Court below.

savings bank, and a "notice ticket," showing that fact, received from it. That ticket was given to Quinn, with the check or order. The defendants' deposit-book was then left at the savings bank, and the order was taken by Quinn to the plaintiff bank to be discounted. James Herdman, the president of the Dollar Savings Bank, was also a director of the plaintiff bank, and was present at the meeting of the board of directors at which the discount was made. And before discounting the order, the plaintiff's cashier inquired at the savings bank as to whether the defendant's deposit-book was there, and was informed that it was. He knew, also, that the defendant was a married woman.

The representation made by Quinn to the defendant, that all bills for labor and materials had been paid by him, turned out to be untrue, and the defendant was compelled to pay $444.90 upon a mechanics' lien for lumber, filed against her houses by a material-man before the maturity of the order. Upon learning of this claim, the defendant's husband notified the Dollar Savings Bank, on her behalf, not to pay the order. On February 1, 1888, it was presented for payment by the plaintiff bank, and payment was refused, whereupon it was protested for non-payment.

At the close of the testimony, the court, EWING, P. J., charged the jury in part as follows:

The plaintiff requests the court to charge:

1. That, under all the evidence, the verdict must be for the plaintiff.

Answer: Refused.[1]

The defendant requests the court to charge:

1. That under all the evidence, the verdict should be for the defendant.

Answer: Refused.

2. If the court refuses the above point, then it is requested to charge, that the plaintiff can recover only the amount that went to the benefit of the improvement of the defendant's separate estate.

Answer: Affirmed.[2]

The Iron City bank claims that Mrs. McCord has no defence as against them. Now, without going into the reasons and the

questions of law that have been discussed very ably by counsel in your presence, we are of the opinion that she has a defence to this order, in the hands of the Iron City bank, to the extent to which she is subject to liens, if you believe the testimony, and that they should be deducted.  Counsel for plaintiff have asked us to instruct you absolutely that under all the evidence they are entitled to recover for the full amount of this order; that we refuse.  Counsel for the defence have asked us to instruct you absolutely that your verdict under all the evidence must be a clean verdict for defendant; that we refuse.  There is no doubt that in some form of action the plaintiffs are entitled to recover from Mrs. McCord the difference between the face of this check, with interest, and what she has had to pay on these mechanics' liens.  Defendant's counsel have asked us to refuse the plaintiff's point, that they are entitled to recover the full amount, and we give you that instruction.  Mrs. McCord has had this money on deposit in the Dollar Savings Bank, drawing interest, it is agreed, at the rate of four per cent, and it is to be counted at that amount, and your verdict should be for that difference.

—The jury rendered a verdict for the plaintiff for $481.10.  Judgment having been entered, the plaintiff took this appeal, assigning for error:

1. The answer to the plaintiff's point.[1]

2. The answer to the defendant's point.[2]

*Mr. George P. Graver* (with him *Mr. D. T. Watson*), for the appellant:

1. Since the passage of the married persons' property act of June 3, 1887, P. L. 332, a married woman can bind herself by an obligation given in the management of her separate estate: Brooks v. Merchants N. Bank, 125 Pa. 394; Real Est. Inv. Co. v. Roop, 132 Pa. 496.  The record shows that the check or order sued on in this case was so given.  It is not necessary that this fact should appear upon the face of the obligation itself: Skillen v. Richmond, 48 Barb. 428; Loomis v. Ruch, 14 Abb. Pr., N. S., 385.  Clearly the defendant had power to make this check or order.  Was it negotiable?

2. It is claimed that the memoranda upon the margins, at the top and bottom, destroy its negotiability.  But the places

Arguments.

where they appear, both being separate from the body of the order, and the fact that the order was filled up on a printed form, prepared by the bank, clearly indicate that they were not intended to form a part of it, but were simply rules of the bank printed upon the blank form, to give notice that the bank's acceptance of the order would be conditional, and to insure the safety and convenience of the maker and the bank.

3. Even if they were a part of the order, all that they required would be implied in the case of any negotiable paper: Wahrus v. Bank, 5 Duer 70; Frank v. Wassel, 64 N. Y. 155. Moreover, if these memoranda would ordinarily render this order non-negotiable, they did not do so as to the defendant, because she intended that it should be negotiated and gave it for that purpose: Raymond v. Middleton, 29 Pa. 530; United States v. White, 2 Hill 59 (37 Am. Dec. 374). The fact that no grace was allowed, does not indicate non-negotiability; a check is not entitled to days of grace, although made payable at a future time: Champion v. Gordon, 70 Pa. 474.

*Mr. Levi Bird Duff*, for the appellee:

1. The rule of the savings bank allowing orders to be drawn by depositors, does not authorize the drawing of a check or a time draft on the bank. The order is merely a substitute for the presence of the depositor in the excepted cases: the book draws the money, and the order simply identifies the person collecting it, in case the depositor cannot present the book in person. The order was drawn in violation of the rule, as Mrs. McCord was neither sick, nor infirm, nor absent from the city; and the plaintiff had notice of such violation, as the president of the savings bank was present, as a member of the plaintiff's board of directors, when the discount was made.

2. The draft, check, or order sued on, is not a negotiable instrument, being drawn upon a particular fund and being subject to contingencies appearing upon its face: 3 Kent's Com., 76; Frevall v. Fitch, 5 Wh. 325; Patterson v. Poindexter, 6 W. & S. 227; Charnley v. Dulles, 8 W. & S. 353; Gillespie v. Mather, 10 Pa. 28; Citizens N. Bank v. Piollet, 126 Pa. 194; Chitty on Bills, 141. But, if it be treated as a bill of exchange, it was entitled to days of grace and was prematurely protested, not being within the exception of " checks

Opinion of the Court.

drawn upon bankers " in the act of March 30, 1875, P. L. 38. And the Dollar Savings Bank is not a bank in the commercial sense: Anderson's Dict. of Law, 105; Selden v. Trust Co., 94 U. S. 420; Mercantile Bank v. New York, 121 U. S. 161. Moreover, the plaintiff cannot maintain the suit in its own name: Raymond v. Middleton, 28 Pa. 530. In no event can there be a recovery beyond the amount due Quinn for the improvement of the defendant's separate estate: Real Est. Inv. Co. v. Roop, 132 Pa. 496; Schlosser's App., 58 Pa. 493.

OPINION, MR. JUSTICE STERRETT:

This action of assumpsit was brought by the Iron City National Bank, indorsee and holder, against Mrs. McCord, drawer, of an order in the following form:

| | |
|---|---|
| No. 124 FOURTH AVENUE. | RETURN NOTICE TICKET WITH THIS ORDER.<br><br>No. of Book, 44,684.  $900-$\frac{00}{100}$    Nov. 30, 1887.<br><br>**DOLLAR SAVINGS BANK,**<br>(Of Pittsburgh.)<br><br>Nine weeks from date, or Feb. 1, 1888,<br><br>Pay to W. J. Quinn or order.............................. ~~or Bearer,~~<br><br>Nine hundred...............................................$\frac{00}{100}$ Dollars.<br><br>WITNESS:                Sign on line below, First name in full.<br><br>J. P. McCORD.                MARTHA J. McCORD.<br><br>DEPOSIT BOOK MUST BE AT BANK BEFORE MONEY CAN BE PAID. | Open daily from 9 o'clock A. M. to 3 o'clock P. M. |

[Indorsed:]   W. J. QUINN.

It appears that W. J. Quinn, the payee and indorser of the order, obtained, the same from the defendant, in payment of the balance claimed to be due him as contractor for the erection of buildings on her separate estate, by assuring her that all claims of material-men and sub-contractors were fully paid, and no liens could be filed against the buildings. That representation proved to be untrue, and liens amounting, with costs, to $444.90 were subsequently filed. In view of the facts, it cannot be doubted that, as between Quinn and Mrs. McCord, the latter had a valid defence to the payment of the order, at

least to the extent of the liens, and, unless the order is nego-
tiable, in the sense of the law-merchant, the plaintiff, as
Quinn's indorsee, is in no better position. The learned presi-
dent of the Common Pleas must have been of that opinion,
because he refused to charge " that, under all the evidence,
the verdict of the jury must be for the plaintiff," and instructed
them that, if they believed the evidence, the defendant had a
valid defence to the order, in the hands of the bank, to the
extent of the liens and costs thereon. The verdict in favor of
the plaintiff for $481.10 was evidently the result of that in-
struction, as applied to the facts found by the jury. The main
question, therefore, is whether, in the legal sense, the order in
suit is negotiable. If it is not, there was no error in refusing to
charge as requested by plaintiff, and in affirming defendant's
second point.

While the direction is to " pay to W. J. Quinn or order, nine
hundred dollars in nine weeks from date, or Feb. 1, 1888,"
there is enough on the face of the order to show that, in the
commercial sense, it was not a regular check, and was not in-
tended to operate as such. It sufficiently appears from the
memoranda on its face that it was drawn on a specially depos-
ited fund held by the bank subject to certain rules and regula-
tions, in force between it and the depositor, requiring certain
things to be done before payment could be required, viz., pre-
vious notice of depositor's intention to draw upon the fund,
return of the notice ticket with the order to pay, and presen-
tation of the deposit-book at the bank, so that the payment
might be entered thereon.

Section 8 of the by-laws given in evidence, requires : " When
money is to be drawn out, the book must be brought to the
office to have payment entered thereon. Depositors must take
out the money themselves, except, in case of sickness or other
infirmity, or absence from the city, it may be paid to their
order, properly witnessed, accompanied by the book. Blank
orders will be furnished at the office of the corporation."
One of those blanks appears to have been used for the order,
sued on in this case, substituting the word " order " for "bear-
er." According to the testimony of plaintiff's cashier, his
attention was called to the prerequisites to payment noted on
the face of the order, and it must therefore be presumed that

he knew the order " to pay in nine weeks," etc., was restricted or qualified by the provisions contained in the by-law, requiring notice of intention to draw, return of notice ticket with the order, and, at the same time, presentation of the deposit-book.   The effect of these requirements was to restrain or qualify the otherwise general operation of the order.

It is well settled that anything written or printed on a negotiable instrument prior to its issuance by the maker, relating to the subject matter of the instrument, and tending to restrain or qualify it, must be regarded as part of the contract intended to be evidenced thereby : Costello v. Crowell, 127 Mass. 293, and cases there cited ; Henry v. Colman, 5 Vt. 403 ; Fletcher v. Blodgett, 16 Vt. 26 ; Benedict v. Cowden, 49 N. Y. 396, 400 ; Johnson v. Heagan, 23 Me. 329.   In Costello v. Crowell, supra, the words, " given as collateral security with agreement," written on the margin of a promissory note, were held to destroy its negotiability.   Speaking for the court in that case, Mr. Justice LORD said : " It is settled, by an uninterrupted series of decisions, that any language put upon any portion of the face or back of a promissory note by the maker, before delivery, is part of the contract; and, if by any such language the payment of it is not necessarily to be made, at all events and of the full sum, in lawful money, and at a time certain to arrive, and subject to no contingency, the note is not negotiable."   Our own cases, among which are Overton v. Tyler, 3 Pa. 346 ; Sweeney v. Thickstun, 77 Pa. 131 ; Woods v. North, 84 Pa. 407 ; Citizens N. Bank v. Piollet, 126 Pa. 194, in effect recognize the same principle.   In Jones v. Fales, 4 Mass. 245, the words, " Foreign bills," written at the foot of a promissory note were held to be part of the note itself, and rendered it non-negotiable.   The same effect was given to the words, " In facilities," shown to mean a class of bank-notes, then worth less than par : Springfield Bank v. Merrick, 14 Mass. 322.

The principle recognized in these and other cases is undoubtedly correct, in that it is necessary to preserve the integrity of negotiable instruments.   Applying it to the instrument in suit, it is, in substance, merely an order on the Dollar Savings Bank to pay W. J. Quinn, or order, nine hundred dollars in nine weeks from date, or February 1, 1888, provided he or his trans-

feree present to the bank, with the order, the notice ticket, and also produce at and before the time of payment the drawer's deposit-book. As already remarked, these are undoubtedly prerequisites which restrain or qualify the generality of the order to pay as contained in the body of the instrument. They are also prerequisites with which it may be difficult, if not sometimes impossible, for the payee, transferee, or holder of such an order to comply. As was said in Woods v. North, supra: " It is a necessary quality of negotiable paper that it should be simple, certain, unconditional, not subject to any contingency. It would be a mere affectation of learning to cite the elementary treatises, and the decided cases which have established this principle. It is very important to the commercial community that it should be maintained in all its rigor." If this is not done, such paper would soon cease to be a " courier without luggage,"* and become loaded down with conditions, contingencies, and all sorts of impedimenta, so that its usefulness would be greatly impaired, if not entirely destroyed.

Technically, the plaintiff was not entitled to recover; but, by treating the record as amended, a verdict was rendered and judgment entered thereon for all that could have been recovered if Quinn had been made the legal plaintiff. Substantial justice has thus been done, and there is no reason why the judgment should not be

Affirmed.

---

*Overton v. Tyler, 3 Pa. 346. It is said that, opposite the sentence, " A negotiable bill or note is a courier without luggage," in the original opinion, Mr. Chief Justice GIBSON wrote in the margin: " The printer will please print this, *luggage*, and not *baggage* according to a barbarous American usage." See Mr. Owen Wister, in 3 Green Bag 75 :—REP.