## WHITING v. EQUITABLE LIFE ASSUR. SOC.

### (Circuit Court of Appeals, Fifth Circuit.   November 28, 1893.)

### No. 115.

**1. WRIT OF ERROR—PROCEEDINGS—AMENDING BILL OF EXCEPTIONS.**
It is within the authority of the trial court, during the term, to allow an amendment to the record showing that a paper excluded from evidence was afterwards offered again and admitted; and at the hearing above, on writ of error, the bill of exceptions may be amended to show that such action was taken.

**2. INSURANCE—ACTION TO RECOVER PREMIUM—EVIDENCE—SUFFICIENCY.**
An administrator sued a life insurance company to recover the premium alleged to have been paid by his intestate upon an application for insurance, which was not granted by the company; and he put in evidence the latter's receipt for such premium, which provided for repayment if the application was denied. The testimony of defendant's agent, who conducted the transaction, showed that the intestate had given a sight draft for the premium, but had paid no cash; that the draft was protested, and had never since been paid; and that it was partly on this ground that the application had been refused. There was no conflicting evidence sufficient to raise a doubt. *Held*, that it was proper to direct a verdict for defendant.

In Error to the Circuit Court of the United States for the Northern District of Florida.

This was an action by J. T. Whiting, administrator of H. C. F. Brown, against the Equitable Life Assurance Society. There was a judgment for defendant on a verdict directed by the court, and plaintiff brings error.

This was an action brought by the complainant in error, J. T. Whiting, as administrator of the estate of H. C. F. Brown, in assumpsit against the Equitable Life Assurance Society, a corporation of New York, in the circuit court for Escambia county, state of Florida, whence it was removed to the circuit court of the United States for the northern district of that state. It was alleged that plaintiff's intestate, on the 28th day of June, 1873, made application to the defendant company for a policy of insurance upon his life for the sum of $30,000, and paid therefor the first premium of $817.51. The policy was not granted, but the party died the 16th of July that year. In 1892 an administrator was appointed, and suit was commenced by him to recover, first, the amount of premium paid with interest; second, $30,000 and interest for life insurance on the life of the plaintiff's intestate. This last claim was abandoned by plaintiff at the trial, and the only demand was for the premium alleged to have been paid, with interest. Upon the trial, the plaintiff proved the death of the intestate, the granting of the administration to the plaintiff, and that the widow of the intestate came into possession of her husband's papers, among which she found a receipt as follows, to wit:

"Age 36.       No. ——.

"The Equitable Life Assurance Society of the United States, New York.
"Amount, $30,000.00.       Premium, $817.50.

"William C. Alexander, President; Henry B. Hyde, Vice President.

"Received from Mr. H. C. F. Brown eight hundred and seventeen dollars and fifty cents, being for the first annual premium and policy fee on an assurance of thirty thousand dollars on the life of the said H. C. F. Brown, for which an application is this day made by him to the Equitable Life Assurance Society of the United States. The said H. C. F. Brown to be assured from the date of this receipt, in accordance with the rate of premiums and the provisions of the policy of said society: provided always said application shall be approved and accepted by said society; but should the said applica-

tion be declined by said society, then the amount, the receipt whereof is hereby acknowledged, is to be repaid by me to the said H. C. F. Brown. Inasmuch as delays and miscarriages may take place in the mails or otherwise, the applicant for the policy desired himself to send the annexed coupon by mail to the head office of this society, where it will receive immediate attention. Failure to do this will relieve the society from any liability under this conditional receipt.

"Dated Mobile, June 28th, 1873.　　　　　Jos. E. Murrell, G. A.,
　　　　　　　　　　　　　　　　　　　　　"Per J. C. Ruse.

"For further reference, the applicant should note here the date he himself sends the coupon, and the name of postoffice at which mailed.

"Date of sending coupon, ―――, 187-.　Mailed at ――― post office.

"In case of acceptance, the society will send the policy without delay, and, in case of declining the application, will at once notify the applicant. Should, therefore, the applicant not receive from the society notice of his acceptance or rejection within fifteen days from the date hereof, he is requested to communicate at once with the society.

"No agent is authorized to deliver this 'conditional receipt' without the coupons attached."

Upon the presentation of this paper, its reading was objected to because it was not shown that Murrell or Ruse had signed the same, or that Murrell was authorized to sign it, which objection was sustained. The plaintiff then introduced interrogatories and answers of one Bacon, which had been taken by defendant, to the effect that during June and July, 1873, at which time the receipt appears to have been given, he was clerk in the employ of the Equitable Life Assurance Company; that he identified the application of Brown for $30,000, forwarded through their agent, Murrell, at Mobile; that the application was not approved and accepted, on account of insufficiency of examination and lack of a certificate; and that he informed Murrell by letter of the suspension of the application until further examination. He also presented and identified a letter written by him, notifying Murrell of the suspension of Brown's application, and one from Murrell in reply, which was as follows:

"The Equitable Life Assurance Society of the United States, No. 120 Broadway, New York.

"Wm. C. Alexander, Pres't; Henry B. Hyde, Vice-Pres't; J. E. Murrell Gen'l Agent, Mobile Co., Ala., and Border Counties of Mississippi.

　　　　　　　　　　　　　　　　　　"Mobile, Ala., July 12th, 1873.

"Geo. W. Phillips, Esq., New York—Dear Sir: I have your lines of the 8th respecting Brown. Mr. Brown gave us a sight draft on New Orleans for the premium, which was protested, and it seems that he was not authorized to draw the draft, there being no such firm in New Orleans; hence the provisional insurance is canceled, and the application must remain declined. The examination was complete, being examined by an outside physician also. The condition of the kidneys normal, but by oversight the blank opposite that question was not filled up, the risk being first class. However, for the reason stated, I do not now deem the case morally acceptable.

"Yours, very truly,　　　　　　　　　Jos. E. Murrell, Gen'l Agt."

The original record does not show, in the bill of exceptions therein contained, that the receipt which had been objected to and excluded was again presented and permitted to be read in evidence, but an amendment to said record presented at the hearing alleges that it was so presented and admitted and read in the case, and that the record had been properly amended by the action of the court below. Mrs. Brown, who had testified to finding the receipt among her husband's papers, was recalled, and testified that a short time after her husband's death John C. Ruse called upon her, and wanted to see her husband's papers, and showed her her husband's signature upon a piece of paper attached to a small book, which he declined to let her have unless he could see the papers. He also wanted her to give him the receipt of the company, which she refused to do. He also told her that there was a letter at Bay Minette for her husband, but that he would send her a copy of it. He

shortly afterwards sent her a copy of a letter said to have been written to her husband, which was as follows:

"The Equitable Life Assurance Society of the United States, No. 120 Broadway, New York.

"Wm. A. Alexander, President; Henry B. Hyde, Vice President; J. E. Murrell, Gen'l Agent, Mobile, Ala., Mobile County, Alabama, and Border Counties of Mississippi.

"Mobile, Ala., ——, 1873.

"Copy of my letter July 8th: 'H. C. F. Brown, Esq., Bay Minette—Dear Sir: I regret to inform you that your application for $30,000 in the Equitable Life Assurance Society has not been accepted, and no policy will be issued. Please return me the receipt I gave you and I will forward the sight draft you gave me for the premium. Yours, very truly, Jos. E. Murrell, G. A., per Jno. C. Ruse.'

"N. B. This letter was directed to 'Mr. H. C. F. Brown, Bay Minette, M. & M. R. R.' "

Here the plaintiff rested his case, and John C. Ruse was introduced for the defendant, who testified: That during June and July, 1873, he was clerk in the insurance office of J. E. Murrell, who was general agent for the defendant company. That he recollected H. C. F. Brown, plaintiff's intestate, making application for insurance, in writing, in June, 1873, and that he had signed his name as witness, and that the application was in his handwriting. That Brown never paid any premium in cash for the policy for which application was made, but that he gave a draft upon some house in New Orleans, upon which a receipt was given him. That the draft was promptly forwarded for collection, but was returned with report that the collection could not be made, and the draft was protested. That such draft was never paid, so far as he knew. The draft was returned, and remained with J. E. Murrell, without the said Brown, or any one else, paying the same. He remained with Murrell for a long time, and it was not paid. That the draft was protested for nonpayment. That it was always kept by Murrell, and, if not destroyed, is probably among his papers, he being dead. He admitted that he did ask Mrs. Brown to surrender the receipt given by him to Brown, because upon its face it would have appeared that money had been received, and the company would have to show that it had not. This concluded the testimony in the case; whereupon the counsel for the defendant requested the court to instruct the jury to find a verdict for the defendant, which it did; and, under such instruction, the jury returned such verdict, and judgment was entered accordingly.

The only ground of error alleged is not submitting the determination of the case to the jury, but instructing them to find a verdict for the defendant.

A. J. Rose, for plaintiff in error.

C. M. & J. C. Cooper, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

LOCKE, District Judge, (after stating the facts.)  The first question presenting itself in this case is as to allowing the amendment to the bill of exceptions as originally presented, which shows that the receipt in question was, subsequent to its rejection, again presented, admitted by the court, and read to the jury. It appears that the motion to amend the record was made to the presiding judge during the same term at which the trial was had, considered by him, and the order entered allowing the desired amendment. Unquestionably, it was within the power of the court to so correct any omission, either of the clerk or the party preparing the bill of

exceptions, during the term. Even subsequent to the adjournment of the term the court could, upon application, correct the record so as to show the truth of what actually occurred, and repair any error or omission of its officers, upon proper application being made. Matheson's Adm'r v. Grant's Adm'r, 2 How. 263; In re Wight, 134 U. S. 136, 10 Sup. Ct. 487; Bank v. Eldred, 143 U. S. 293, 12 Sup. Ct. 450. The amendment is allowed. Accepting the bill of exceptions as amended, and considering that the receipt was admitted in evidence, was there then a case made by the entire testimony that would justify the jury in returning a verdict for plaintiff? There was no conflict or contradictory testimony, either of statement or circumstance, that needed weighing and deciding. It is true the existence of the receipt was prima facie evidence of payment, but such as was easily explained away. The fact that a sight draft was so far considered a payment as to justify a receipt, and yet was not a transfer of value, and, when payment upon it was refused, was found not to be, presents no inconsistency. The testimony introduced by plaintiff, containing as it did the deposition of Bacon and the letter of Murrell, defendant's general agent, and upon which alone the receipt appears to have been admitted, so explained the entire transaction that it is very doubtful if a verdict for the plaintiff would have been justified upon his testimony alone. But when the testimony of Ruse, the only witness personally acquainted with the facts of the payment and giving of the receipt, and the truth of whose testimony is in no way questioned by anything appearing in the record, is accepted, what shadow of right the plaintiff might have appeared to have disappears. The apparent inconsistency of the date of the letter of Murrell to Brown, informing him that his application had not been accepted, and no policy would be issued, it being July 8th, the same day upon which the application was suspended at the New York office, and which has been commented upon at some length by plaintiff's attorneys, is explained by the last sentence of his letter of the 12th July, wherein he states that he did not deem the case "morally acceptable." Unquestionably, this conclusion had been reached by the 8th of July, the date of his letter, on account of the nonpayment of the draft.

It is a well-established rule of practice in the United States courts that the court may withdraw a case from the jury, and direct a verdict for the plaintiff or the defendant, where the evidence is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it. Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, and the numerous cases therein cited. In this case it is not considered that the evidence would, in any light it might be viewed, giving it the weight to which it was entitled as undisputed and uncontradicted, justify a verdict for the plaintiff, and we find no error in the judge in instructing the jury to find for the defendant. The writ of error is dismissed, and the judgment below affirmed, with costs.