LINCOLN NAT. BANK OF LINCOLN, ILL., v. PERRY et al.

(Circuit Court of Appeals, Eighth Circuit. February 18, 1895.)

No. 385.

**1. PRACTICE—AMENDMENT OF RECORD AFTER ISSUE OF WRIT OF ERROR.**

An action was brought against P. and R., with three other persons, who were not served, and did not appear or take any part in the trial. Judgment having been rendered in favor of the defendants, the plaintiff sued out a writ of error; making P. and R., only, parties. By a mistake of the clerk, the record, as lodged in the appellate court, showed that the three defendants, other than P. and R., had appeared and participated in the trial, and that judgment had been rendered in their favor. P. and R. moved to dismiss the writ of error for want of parties. The plaintiff then moved, in the lower court, to have the record corrected nunc pro tunc, which was done, after hearing P. and R. in opposition. *Held,* that it was probably within the power of the trial court to amend its record so as to correct the clerk's mistake and conform the record to the truth, and that, at all events, if erroneous, its action should be corrected by writ of error.

**2. PROMISSORY NOTE—NEGOTIABILITY.**

A promissory note which contains an agreement to the effect that if there shall be any depreciation, prior to the maturity of the note, in collateral deposited to secure its payment, then the payee or holder may call for such further security as he deems satisfactory, and, if it is not furnished within two days, may proceed at once to sell the collateral, is not a negotiable note.

In Error to the Circuit Court of the United States for the Western District of Arkansas.

F. A. Youmans (J. H. Clendening and Homer C. Mechem, on the brief), for plaintiff in error.

John H. Rogers (James F. Read, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This was a suit by the Lincoln National Bank, the plaintiff in error, against James K. Perry and John A. Ross, the defendants in error, and against three other persons, to wit, J. M. Lane, Orsen Kent, and Harry E. Kelley, the action being founded on a note in the sum of $5,000, which was executed in favor of R. L. Du Vall by said James K. Perry and John A. Ross on December 31, 1890. There was a verdict and judgment in favor of the defendants, and the plaintiff below has brought the case to this court by writ of error.

The first question to be considered is whether a pending motion to dismiss the writ of error should be sustained. The facts pertinent to the decision of this question are as follows: The record, as originally lodged in this court, showed that the defendants Lane, Kent, and Kelley had appeared and participated in the trial in the circuit court of the United States for the Western district of Arkansas, and that a judgment had been rendered in their favor, as well as in favor of the defendants Perry and Ross. Nevertheless, Lane, Kent, and Kelley were not joined as defendants in the writ of error, and for that reason Perry and Ross moved to dismiss the writ,

on account of the nonjoinder therein of all the persons in whose favor the judgment had been rendered. Subsequently the plaintiff bank applied to the circuit court of the United States for the Western district of Arkansas for an order amending and correcting its record so as to show, in accordance with the fact, that Lane, Kent, and Kelley had neither appeared nor participated in the trial in the circuit court, and that no judgment had in fact been rendered in their behalf by the trial court. This application was supported by an affidavit of counsel showing that two of said defendants, to wit, Lane and Kent, had never been served with process in the suit; that neither Lane, Kent, nor Kelley had appeared or participated in the trial in the circuit court; that the issues tried in that court were solely between the plaintiff bank, on the one hand, and Perry and Ross, the makers of the note, on the other; and that the affiant had only recently discovered the alleged error in the record which he sought to have corrected. After the hearing of said application, which was resisted by Perry and Ross, the circuit court found and decided that there was an error in its record, in the respects alleged by the plaintiff bank. It accordingly ordered that the plaintiff's application to correct the record be granted, and that the record be amended nunc pro tunc so as to show that neither Lane, Kent, nor Kelley had appeared at the trial, and that no judgment was entered in favor of either of said defendants. Subsequently the plaintiff in error suggested a diminution of the record, and the proceedings aforesaid in the circuit court, together with the amended record, showing a judgment in favor of Perry and Ross only, have been duly certified to this court.

It is manifest from the foregoing statement that if a defect existed in the original record lodged in this court which rendered the motion to dismiss the writ of error tenable, that defect has been cured by the proceedings taken in the circuit court to amend and correct the record, and the motion to dismiss the writ of error is no longer tenable, unless such proceedings in the circuit court were wholly unauthorized by law, and were therefore void. We are not prepared to admit that the circuit court exceeded its power, in undertaking to amend its record in the manner aforesaid, if it was satisfied that through accident or inadvertence, or a misprision of the clerk, the record did not in fact speak the truth. The power to correct mistakes in its record, occasioned by oversight, which are of such nature that the record does not show what was in fact done or decided, is a power that is inherent in all courts of superior jurisdiction, and is frequently exercised in furtherance of justice. The power in question does not extend, of course, to the correction of errors of law committed by the court, which, in all cases, must be remedied by appeal or writ of error, but is strictly limited to the correction of mistakes or misprisions of the clerk or other officers, by reason of which the record does not speak the truth, or fails to speak the whole truth. Matheson's Adm'r v. Grant's Adm'r, 2 How. 263, 281; Bank v. Moss, 6 How. 31, 38; Insurance Co. v. Boon, 95 U. S. 117, 125; In re Wight, 134 U. S. 136, 10 Sup. Ct. 487; Black, Judgm. §§ 130, 131, and cases there

cited. It seems, also, that the power to thus correct mistakes in the record may be exercised within any reasonable period, even after the lapse of the term at which the mistake was committed, and even after the erroneous record has been removed to an appellate court by appeal or writ of error. Matheson's Adm'r v. Grant's Adm'r, supra; Walker v. State, 102 Ind. 502, 513, 1 N. E. 856; Seymour v. Harrow Co., 81 Ala. 250, 1 South. 45; Whiting v. Society, 8 C. C. A. 558, 60 Fed. 197. In the light of the authorities, we cannot hold that the circuit court exceeded its power in amending the record in the manner above indicated. The record was false in point of fact, and the circuit court so found, in that it recited that Lane, Kent, and Kelley had appeared and defended the suit, and that the court had actually rendered a judgment in their favor, whereas Lane and Kent had not even been served with process, and the court had not tried any issue, as between the plaintiff bank and either of said three defendants, and had not rendered a judgment in favor of either of them. The judgment actually spread of record was the act of the clerk, and in no sense the act of the court. Such mistakes, we think, are clearly subject to correction within any reasonable period of time. But if we should concede that the circuit court acted erroneously, in correcting its record, then it is questionable, to say the least, whether its action in that behalf is now subject to review. It assumed to correct its record on the theory that it was erroneous, owing to a mistake of the clerk. The defendants in error appeared, and resisted the application; but they failed to except to the order amending the record, or to bring the action of the trial court before this court for review by a writ of error. Under these circumstances, there are some authorities which maintain, with good reason, that such subsequent action of the trial court can only be reviewed by an appeal or by writ of error, and that if not so challenged, it must be accepted as conclusive. Adler v. Sewell, 29 Ind. 598; Railroad Co. v. Whorley, 74 Ala. 264; Simmons v. Craig, 137 N. Y. 550, 33 N. E. 76; Walker v. State, supra. Without pursuing this branch of the case further, it is sufficient to say that we conclude that the motion to dismiss the writ of error should be denied.

It is necessary, therefore, to consider the case upon its merits. The note in suit appears to be a renewal of a previous note for the same amount, and of like tenor and effect, that was executed by the defendants Perry and Ross, and was delivered by them to R. L. Du Vall, the payee, in payment for 800 shares of stock in the Georgia Hedge Company, an Arkansas corporation. After the execution of the renewal note, which is now in controversy, it was indorsed by Du Vall to the firm of Lane, Kent & Kelley; and by the latter firm it was indorsed and transferred, for value and before maturity, to the Lincoln National Bank of Lincoln, Ill., the present plaintiff. Perry and Ross filed a very lengthy answer to the suit. From the averments contained in the answer, it fairly appears, we think, that the following defenses were pleaded in substance: First, that the note was void because executed in violation of the

constitution of the state of Arkansas; second, that the makers of the note, Perry and Ross, had been induced to execute and deliver the original note through false and fraudulent representations made by Du Vall, the payee; third, that the consideration of the note had failed, because Du Vall had disposed of the 800 shares of stock in the Georgia Hedge Company, for which the original note was executed, which stock, the answer averred, had been left in his hands as collateral to secure the payment of said note. These defenses were supplemented by the further allegation that Lane, Kent & Kelley knew of the fraudulent character of the note in suit when they acquired it, and that the transfer of the note by them to the plaintiff bank was merely colorable, and that the bank was not a bona fide holder of the paper, but that the payee, R. L. Du Vall, was the real owner thereof. It was also averred in the answer, in substance, that the note in suit was not a negotiable instrument, because the amount payable thereon at maturity was uncertain. At the conclusion of the trial the plaintiff moved the court to direct the jury to return a verdict in its favor for the full amount due on the note, to wit, $5,503.10. This motion was denied. The case was then submitted to the jury on the three following instructions, the first of which was given at the instance of the plaintiff and the others at the instance of the defendants:

(1) "If the plaintiff purchased this note before it matured, for a valuable consideration, then it is a bona fide holder of said note, and may recover herein, unless you find from the evidence that the plaintiff knew when it purchased said note the circumstances under which it was obtained from the defendants." (2) "The court instructs the jury that if they find that said R. L. Du Vall, in consideration of the note of which the note sued on is a renewal, sold the defendant Perry a certain amount of Georgia Hedge Company stock, and has failed or refused to have said stock transferred to said Perry, and, in violation of his said agreement, has fraudulently, and without Perry's knowledge and consent, assigned said stock to trustees appointed by said Du Vall,—a contract to which Perry was not a party, and had no knowledge or notice of,—then the note was without consideration." (3) "If the jury find from the evidence that the note sued on was a renewal of a former note, which was procured to be executed by false and fraudulent misrepresentations, and was without consideration, then the burden of proof is upon the plaintiff to show that it purchased said note in good faith, without notice of its want of consideration, or its procurement by false and fraudulent misrepresentations, and for a valuable consideration; and, if the proof does not satisfy you of these things, the verdict should be for the defendants Perry and Ross."

The plaintiff complains, principally, of the trial court's refusal to direct a verdict in its favor, and of the court's action in giving instructions Nos. 2 and 3 at the instance of the defendants. The motion to direct a verdict for the plaintiff was based on the ground that the note in suit was a negotiable instrument; that the plaintiff bank was a purchaser of the same for value, before maturity; and that there was no evidence before the jury to affect it with knowledge of defenses as between the makers and the payee. If the note was indeed a negotiable instrument (a question to be hereafter considered), we should feel ourselves constrained to hold that the motion to direct a verdict for the plaintiff ought to have been sustained, as there was, in our judgment, no evidence to disprove

the fact that the plaintiff bank was a purchaser for value, before maturity, and without notice of defenses.

The second of the above instructions is criticised on the ground that the facts recited therein do not show that the note in suit was originally "without consideration," as the court declared, but rather show that the consideration had failed, subsequent to its execution, by reason of the fact that Du Vall, while holding the stock for which the note had been given, had transferred and assigned the same to a third party, and had thereby converted it to his own use, and put it out of his power to deliver the same on the payment of the note. This, however, was an immaterial error. A total failure of consideration precludes a recovery on a note, as well as a want of consideration, when the relations of the parties are such as to admit of such defenses. It is of no consequence, therefore, in the present instance, that the words "without consideration" were used, when the phrase "failure of consideration" would have been more appropriate.

The third instruction is challenged on two grounds—First, because it erroneously assumed that there was some evidence tending to show that the plaintiff bank was not a purchaser for value; and, second, because it put upon the plaintiff the burden of proving affirmatively that it bought the note without notice of defenses, besides compelling it to prove that it was a purchaser for value. This brings us to a consideration of the important question whether the note in suit was a negotiable instrument, within the meaning of the law merchant; for, if it was not negotiable, those features of the instruction that are criticised may be ignored, as the instruction, if the note was non-negotiable, was more favorable to the plaintiff than it had any right to demand or expect. The question of negotiability depends upon the effect of a collateral agreement which was incorporated into the note, and for the purpose of showing its relation to the note the whole instrument is quoted below, in the margin.[1]

[1] $5,000. Little Rock, Arkansas, Dec. 31, 1890.

One year from January 13, 1891, we, or either of us, promise to pay to the order of R. L. Du Vall five thousand dollars, for value received, negotiable and payable, without defalcation or discount, at the First National Bank of Little Rock, Arkansas, with interest from maturity at the rate of eight per cent. per annum until paid; having deposited or pledged with said Du Vall, as security for the payment of this or any other liability or liabilities of the undersigned already or hereafter contracted to said Du Vall, the following certificate, No. 3, capital stock of the Georgia Hedge Company, for 800 shares. And the undersigned hereby give to said Du Vall or assigns, or any substitute or person he or his agents or assigns may select, full power and authority to sell, discharged from any right of redemption, said collateral security, or any portion thereof or any substitute therefor or additions thereto, at public or private sale at the option of said Du Vall or assigns, on the nonperformance of the above-mentioned obligations, or the nonpayment of any of the above-mentioned liabilities, at any time or times thereafter, without making any demand for payment, and without advertising the sale of the property herein pledged, nor giving the undersigned any notice whatever; applying the proceeds to the payment of any, either, or all of the above-mentioned obligations, including costs and interest, and accounting to the undersigned for the surplus, if any. In case of deficiency the undersigned promise to pay

.It will be observed that there is embodied in the note an agreement to the effect that if there shall be any depreciation, prior to the maturity of the note, in the collateral deposited to secure its payment, then the payee or any holder may call for such further security, as he deems satisfactory, and, if the same is not furnished within two days, may proceed at once to sell the collateral. It is undoubtedly true, we think, that it would be the duty of the holder of the paper to make an immediate application of the proceeds of the collateral, if, under the aforesaid stipulation, he elected to sell the collateral in advance of maturity. While the agreement is silent as to the application of the proceeds in case of the sale of the collateral before maturity, yet it is fair to infer that the parties intended an immediate application of the proceeds towards the extinguishment of the makers' liability. Any other interpretation of the agreement would authorize the holder of the paper to sell the collateral before maturity, retain the proceeds, and thereafter dispose of the paper to a third party. without indorsing the amount that had been received from the sale of the collateral. It is not probable, we think, that the makers of the note intended to enter into an agreement that would authorize the payee to thus deal with the note and the security. Wherefore, it must be held that the agreement, rightly interpreted, contemplated an immediate application of the proceeds to the payment of the note, in case of a sale of the collateral either before or at maturity. Is a note which contains such a stipulation in the body thereof a negotiable instrument? One of the chief requisites of a negotiable note or bill is that it shall show with certainty the amount payable thereon at maturity and that it shall not be cumbered with conditions which render the amount then payable uncertain. As was said in Costelo v. Crowell, 127 Mass. 293 (and the language was quoted with approval in the case of Bank v. McCord, 139 Pa. St. 52, 59, 21 Atl. 143), "it is settled by an uninterrupted series of decisions that any language put upon any portion of the face or back of a promissory note, which has relation to the subject-matter of the note, by the maker of it, before delivery, is a part of the contract, and that if, by such language, the payment of the amount is not necessarily to be made at all events, and of

said Du Vall or assigns the amount forthwith, with interest after such sale. And it is understood and agreed, should there be any depreciation in the value of any of said securities prior to the maturity of this note, such an amount of additional security shall be furnished as will be satisfactory to said First National Bank or assigns; and should such additional security not be furnished within two days after demand is made, either in person or by written notice put in the post office, said Du Vall or assigns, or substitute or person he may have selected, may proceed at once to sell, as above specified, the security or securities herein named. And, in event payment is not completely made at maturity, the undersigned further agree to pay an attorney's fee of ten per cent. on the amount due and unpaid, if suit is brought to enforce payment of this note and its interest, or any part that may remain unpaid, which said fee shall become due and recoverable in the action brought to enforce the payment of this note, for the use of the attorney bringing said suit.　　　　　　　　　　　　　　　　　James K. Perry.
　　　　　　　　　　　　　　　　　　　　　　　　　　　John A. Ross.

the full sum, in lawful money, and at a time certain to arrive, and subject to no contingency, the note is not negotiable." See, also, Daniel, Neg. Inst. §§ 51, 52. The rule last stated is too familiar to justify further citations. It frequently happens that notes discounted by banks contain a statement that certain securities have been deposited as collateral to secure their payment, together with a stipulation authorizing a sale of such securities, in a certain manner, at the maturity of the paper, if it is not then paid. Such recitals and stipulations do not render the time or fact of payment, nor the amount to be paid at maturity, in the least degree uncertain; and for that reason it is generally held that they do not impair the negotiability of a note that is, in other respects, so drawn as to satisfy the requirements of the law merchant. Towne v. Rice, 122 Mass. 67, 74; Perry v. Bigelow, 128 Mass. 129; Wise v. Charlton, 4 Adol. & E. 786; Fancourt v. Thorne, 9 Q. B. 312. See, also, Hodges v. Shuler, 22 N. Y. 114; Kirk v. Insurance Co., 39 Wis. 138; Hosstatter v. Wilson, 36 Barb. 307. It is manifest, however, that an important element of certainty is destroyed by a collateral agreement appended to a note which may cause a payment to be made thereon of an uncertain sum at an uncertain time before maturity, and thus render the amount payable at maturity somewhat less than the amount specified on the face of the paper. A note of that description, which carries with it the probability, or even the possibility, that it may be partially or wholly extinguished before maturity, differs essentially from bank bills and other forms of currency which negotiable paper is supposed to resemble, and whose functions it is intended to perform. It has accordingly been held in several well-considered cases that stipulations of that nature embodied in a promissory note will impair its negotiability. Thus, in the case of Bank v. Wells, 73 Wis. 332, 41 N. W. 409, a note contained a collateral agreement authorizing the holder to sell, at the maturity of the paper, certain warehouse receipts for provisions that had been deposited as collateral security, "or [to sell the same] before [maturity] in the event of said security depreciating in value, * * * and to apply so much of the proceeds to the payment of this note as may be necessary to pay the same." It also contained this further provision: "And in case the proceeds of the sale of said collateral * * * shall not cover the principal, interest, and expenses, we promise to pay the deficiency forthwith after such sale." It was held that such a stipulation appended to the note destroyed its negotiability, by introducing into the instrument an element of uncertainty as to the amount payable in case any sum was paid before maturity, and as to the time when it would be paid. It was also said that it was probable that, had no express authority been given to sell the collateral before maturity, there would still have remained an element of uncertainty that would have been fatal to negotiability. In the case of Smith v. Marland, 59 Iowa, 645, 13 N. W. 852, the note sued on contained a stipulation, in substance, that if the payees, at any time, considered themselves insecure, they or their indorsees might declare the note due, and take possession of certain personal property for which the

note had been drawn, and sell the same on five days' notice. It was held that the note in question was not negotiable, because the amount which might be payable thereon at maturity was uncertain. In a later case decided by the same court (Bank v. Taylor, 67 Iowa, 572, 25 N. W. 810), the note in suit contained a collateral stipulation authorizing the payee, whenever he deemed himself insecure, to take possession of certain personal property for which the note had been given; but, inasmuch as the stipulation did not authorize a sale of the property before the maturity of the paper, it was held that it did not render the amount payable at maturity uncertain, and on that ground alone the case was distinguished from Smith v. Marland. A note containing a similar provision to the one found in Smith v. Marland, supra, was also held to be nonnegotiable by the supreme court of Kansas. Iron Works v. Paddock, 37 Kan. 510, 15 Pac. 574. See, also, Killam v. Schoeps, 26 Kan. 310; Bank v. Armstrong, 25 Minn. 530.

We are forced to concur in the view taken by these cases,—that the negotiability of a promissory note ought not to be upheld when it contains an agreement authorizing the holder in a certain contingency to demand such further collateral security as he deems satisfactory, and if it is not furnished, to sell the original collateral and to apply the proceeds in payment of the paper before it has become due. Under existing decisions permitting negotiable notes to contain a stipulation authorizing the sale at maturity of collateral securities, and, in some states, authorizing the insertion of an agreement to pay exchange and attorney's fees, as well as a warrant to confess judgment, such instruments have already been burdened with all of the luggage which they can conveniently carry. Furthermore, as notes and bills are designed to circulate freely, and to take the place of money in commercial transactions, sound policy would seem to dictate that they should be in form as concise as possible, and that the obligation assumed by the maker or makers should be expressed in plain and simple language. Woods v. North, 84 Pa. St. 407; Johnston v. Speer, 92 Pa. St. 227; Bank v. Bynum, 84 N. C. 24. It is easy to foresee that, if parties are permitted to burden negotiable notes with all sorts of collateral engagements, they will frequently be used for the purpose of entrapping the inexperienced and the unwary into agreements which they had no intention of making, against which the law will afford them no redress. We hold, therefore, that the note in suit was a nonnegotiable instrument.

It follows from what has been said that the objections urged against the third instruction, above quoted, are untenable. It further follows, we think, that, though the case below was tried on the erroneous theory that the note in suit was negotiable, yet that no error was committed, of which the plaintiff in error can be heard to complain, on the present record. The jury evidently found, in pursuance of the directions given in the third instruction, that the note was procured to be executed by false and fraudulent representations, and that the consideration had failed for the reason stated in the second instruction. Besides, the first instruction

given at the plaintiff's request inferentially admitted that the circumstances under which the note had been obtained from the makers were such that Du Vall, the original payee, could not recover, as against them, and that the plaintiff was only entitled to recover by virtue of the fact that it was an innocent purchaser for value, before maturity. The judgment of the circuit court is therefore affirmed.