*In re* WIGHT, Petitioner. [1]

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

No. 1521. Argued and submitted January 10, 1890. — Decided March 3, 1890.

When it is found by a Circuit Court of the United States that the clerk has failed to put in the record an order which was made at the next preceding term of the court, remanding a case to the District Court, the Circuit Court may direct such an order to be entered *nunc pro tunc.*

The writ of *habeas corpus* cannot be used as a writ of error to inquire into all the errors committed by the court below.

An indictment against a letter carrier of the United States Postal Service,

---

[1] The docket title of this case is *Wight* v. *Nicholson, Superintendent of the Detroit House of Correction.*

Opinion of the Court.

charging that "he did wrongfully secrete and embezzle a letter which came into his possession in the regular course of his official duties, and which was intended to be carried by a letter carrier, which letter then and there contained five pecuniary obligations and securities of the government of the United States," is a sufficient charge that the letter embezzled was intended to be carried by a letter carrier of the United States.

In an indictment against a letter carrier for the embezzlement of a letter received by him in his official character to carry and deliver, it is not necessary to aver that "the letter has not been delivered" if an embezzlement of it is charged.

In a proceeding for a *habeas corpus* to release from confinement a letter carrier charged with embezzling letters delivered to him for carriage, this court will not inquire into the motives with which the letter was put into the mail, even though the object was to detect or entrap the party into criminal practices.

THIS was a petition for a writ of *habeas corpus.* The writ was refused in the court below, and the petitioner appealed. The case is stated in the opinion.

*Mr. Henry M. Duffield* for appellant:

*Mr. Solicitor General,* for appellees, submitted on his brief, which adopted verbatim the brief by *Mr. Charles T. Wilkins,* the attorney for the United States in the court below.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court for the Eastern District of Michigan discharging a writ of *habeas corpus* on a hearing before that court. By this writ the appellant here, Charles H. Wight, sought to be relieved from imprisonment in the Detroit House of Correction, under sentence of the District Court of the United States for the Eastern District of Michigan. The petitioner was indicted in that court upon the charge that on the 28th day of June, 1888, while he was employed in one of the departments of the postal service of the United States, to wit, as superintendent of letter carriers in the post-office at Detroit, he wrongfully and unlawfully secreted and embezzled certain letters which came into his possession in the regular course of his official duty, and

which were intended to be carried by a letter carrier, and which letters contained obligations and securities of the United States of pecuniary value, called treasury notes. There were six other counts for a similar offence.

Upon the trial in the District Court, the jury found a verdict of guilty, against petitioner. He thereupon made a motion in that court for a new trial, and likewise a motion in arrest of judgment. Pending the argument of these motions, the District Court made an order transferring the cause to the Circuit Court for said district, which order is in the following language:

"It is now by the court ordered that this case be certified and remitted to the next Circuit Court of the United States for this district."

These motions were heard in the Circuit Court on the 11th day of March, 1889, before Judges Howell E. Jackson, Circuit Judge, and Henry B. Brown, District Judge, and on the 12th day of March, 1889, the following order was entered of record:

"United States of America
v.
Charles Wight.

"In this cause the defendant's motion to set aside verdict and in arrest of judgment, after mature deliberation thereon, are by the court here now denied."

And on the same day, at the District Court room in the city of Detroit, that court made the following entry:

"The United States
v.
Charles Wight.

Convicted on indictment for embezzling letters, etc.

"The court now deliver judgment on the motions to set aside the verdict rendered by the jury herein and for a new trial, heretofore argued and submitted; and, thereupon, it is ordered that said motions be, and the same are hereby, denied, and that the order heretofore made herein certifying this cause to the Circuit Court of the United States for this district be.

and the same is hereby, vacated as having been improvidently
made.

"And the said defendant being now placed at the bar of
the court for sentence, thereupon the court do now sentence
him, the said Charles Wight, to be imprisoned and kept at
hard labor, at and in the Detroit House of Correction, in the
city of Detroit, Wayne County, Michigan, for the term of two
years from and including this day, and to stand committed
until the terms of this sentence are complied with."

On the 25th of August, thereafter, an application was made
to Mr. Justice Harlan of this court, who was the justice as-
signed at that time to the sixth circuit, for a writ of *habeas
corpus*, to deliver the petitioner, Wight, from restraint in the
Detroit House of Correction, by Joseph Nicholson, its superin-
tendent. On this application Justice Harlan made an order
that a rule issue from the Circuit Court against the marshal of
the United States for the Eastern District of Michigan and
the superintendent of the Detroit House of Correction, return-
able before that court within three days after service of pro-
cess, to show cause why the *habeas corpus* should not issue as
prayed in the petition. To this rule Nicholson made a return,
in which he said that he held the said Wight in restraint of
his liberty as a prisoner in the Detroit House of Correction,
by virtue of the judgment and sentence of the District Court
of the United States for the Eastern District of Michigan,
rendered on the 12th day of March, 1889, a copy of which he
set out. To this return, Wight, by his counsel, made excep-
tion by way of answer, in which he said that the District
Court for the Eastern District of Michigan had not, at the
time of the sentence referred to in said return, any jurisdiction
over him, the said Wight, or any authority to pass sentence
against him, because the said cause in which it pretended to
pass sentence upon him on the 12th of March, 1889, had
been duly certified and remitted from said District Court into
the Circuit Court of the United States in said district, and the
transcript thereof duly filed, and that up to the date of said
alleged sentence, to wit, the 12th day of March, 1889, was
and at the date hereof is still pending in the Circuit Court of

the United States, as more fully and at length alleged and shown by the certified copies of the proceedings in said cause, in the petition filed in this matter.

Petitioner Wight also averred that the District Court of the United States for the Eastern District of Michigan never had or obtained jurisdiction over him for the following reasons : That the indictment on which petitioner was arraigned and tried in said court did not charge the commission of any offence over which said court had jurisdiction, and because the evidence in the case did not establish any offence against the laws of the United States, of which said District Court had jurisdiction.

Upon examination of the record of the Circuit Court in the case at this stage of the proceeding on the writ of *habeas corpus*, it was ascertained that no order remanding the case from the Circuit Court to the District Court had been entered on the journals of the former court, the last order on the subject being the one which we have already recited, overruling the motion for a new trial and the motion in arrest of judgment. Thereupon the judges of the Circuit Court caused the following order to be made:

" United States of America )
          v.                        }
          Charles Wight.        )

" The defendant, being personally present in court, as well as by his counsel, Henry M. Duffield, Esq., and the court having its attention called to its records made and entered in the above-entitled cause on the 12th day of March, A.D. 1889, by the return of Joseph H. Nicholson, superintendent of the Detroit House of Correction, to the writ of *habeas corpus* heretofore allowed by this court on the petition of the above-named Charles Wight, and upon inspection of said records, so made and entered as aforesaid, it satisfactorily appears to the court that the same is not a full and correct record of the order which was in fact made by this court on the 12th day of March aforesaid, in this, that it fails to show the order of this court which was duly made on the said 12th day of

March, remitting said cause out of this court into the District Court of the United States for the Eastern District of Michigan; therefore, after hearing the said Charles Wight, by his counsel, in opposition thereto, this court, upon its own motion, based upon its recollection of the facts of the making of said order remitting said cause as aforesaid into said District Court, now orders and directs that the same be entered now as of the said twelfth day of March, one thousand eight hundred and eighty-nine, according to the facts thereof, which are as follows:

"At a session of the Circuit Court of the United States for the sixth circuit and eastern district of Michigan, continued and held, pursuant to adjournment, at the district court room, in the city of Detroit, on the twelfth day of March, in the year of our Lord one thousand eight hundred and eighty-nine.

"Present: The Hon. Howell E. Jackson, Circuit Judge; the Hon. Henry B. Brown, District Judge.

"United States of America )
     v.                       }
     Charles Wight.         )

"The defendant being personally present in court, as well as by his counsel, Henry M. Duffield, Esq., said United States being represented by C. P. Black, United States attorney, and Charles T. Wilkins, assistant United States attorney, and the said United States attorney objecting to the consideration of said cause on the part of this court for the reason that there was no authority in law for the District Court to remit said cause to this court after verdict had in said District Court; therefore the court, upon its own motion, hereby remits said cause back into the said District Court for the Eastern District of Michigan for such action as said District Court shall see fit to take."

Thereupon the Circuit Court on the 30th day of September, 1889, on the same day that it had ordered the *nunc pro tunc* entry of the order remanding the cause to the District Court, being of the opinion that this order cured the defect of the record, which showed the case to be still pending in the Circuit

Court and being further of opinion, as appears from their judgment in the matter, that the case had never been lawfully removed from the District into the Circuit Court, and that therefore said District Court had always retained jurisdiction of the case, made an order discharging the writ of *habeas corpus*.

It is mainly upon these orders about the several removals of the case from one court into the other that appellant relies to show that the District Court at the time of pronouncing its judgment of imprisonment against appellant had no jurisdiction of the case. But there is also a further point made, that the letters which the appellant embezzled were never put into the mail with intent that they should be carried, within the meaning of the statute.

Of course if the judge of the District Court is right in the opinion expressed by him in the orders which he made, that he had no power after the verdict in the District Court to transfer it to the Circuit Court, then the case had really never been withdrawn from the jurisdiction of the District Court, and the question arising upon the absence of any record in the Circuit Court of an order remanding it back to the District Court is of no consequence, because all that was done in the Circuit Court, in that view, was without jurisdiction, and the case never was lawfully in that court, and the District Court had the right to make the order, which it did make, setting aside its former order transferring the case to the Circuit Court. In this view of the subject, the case having always been really under the jurisdiction and control of the District Court, its judgment sentencing the prisoner on the verdict was within its power, and is not examinable on this writ of *habeas corpus*.

But we are not satisfied that this view of the powers of the two courts is a sound one. While we do not decide the question now, because it is not necessary, (as our judgment is the same in either event,) we shall, for the purposes of the present case, treat it as if the order transferring the case from the District Court into the Circuit Court was a valid order, so that it could only be remanded from the Circuit Court into the District Court by some order or action of the former.

Opinion of the Court.

No such order was found upon the records of the Circuit Court at the time sentence was imposed upon the prisoner in the District Court; if no such order had been made previous to that judgment, the case was still pending in the Circuit Court, and the District Court had no authority to pass the sentence it did upon the prisoner. This view of the subject calls upon us to inquire whether the *nunc pro tunc* order of September 30 was a valid order, and one within the power of the Circuit Court to make.

Our first impression was that whatever might be the powers of the courts in this regard over their records during the term in which the transactions are supposed to have occurred, the record of which, or failure to make any record of which, is the subject of amendment, yet when it was attempted to do this after an adjournment and at a subsequent term of the court, the powers of the court in making such changes in the records of the proceedings were limited to those in which there remained written memoranda of some kind in the case, and among the files of the court, by which the record could be amended, if erroneous, or the proper entry could be supplied, if one had been omitted. And especially that in criminal procedure this power to make such entries, at a subsequent term of the court, of what had transpired at a former term, as would establish the authority of the court to pass a sentence of fine or imprisonment, either did not exist at all, or, if it did, was limited to cases in which some written evidence of what was done remained in the papers connected with the case.

We are satisfied, however, upon an examination of the authorities, that this restriction upon the power of the court does not exist. Mr. Bishop, in his first volume on Criminal Proceedings, section 1160, states the doctrine in the following terms:

"When the term of the court has closed, it is too late to undo, at a subsequent term, what was done at the former term. A judgment of the court, for instance, cannot then be opened, and modified or set aside. Neither, it has been held, can the clerk, at a subsequent term, make an entry of what truly

transpired at the preceding term. But this refers to the power of the *clerk*, proceeding of his own motion. The *court* may order *nunc pro tunc* entries, as they are called, made to supply some omission in the entry of what was done at the preceding term; yet this is a power the extent of which is limited, and not easily defined. In general, mere clerical errors may be amended in this way. So of the mistake of the clerk in the name of the judge before whom the indictment was found."

The present case comes within the clause of this section which declares the power of the court to make *nunc pro tunc* entries to supply some omission in the record of what was done at the time of the proceedings. An extensive list of authorities is cited in the foot-note of Mr. Bishop, and among those which support the power of the court to make a record of some matter which was done at a former term, of which the clerk had made no entry, the following cases directly affirm that proposition: *Galloway, Administrator* v. *McKeithen*, 5 Iredell (Law), 12; *Hyde* v. *Curling*, 10 Missouri, 374; *State* v. *Clark*, 18 Missouri, 432; *Nelson* v. *Barker*, 3 McLean, 379; *Bilansky* v. *The State of Minnesota*, 3 Minnesota, 427.

The opinion of the court in this latter case contains a somewhat full reference to the history of this subject, as it is found in the reports of the English cases, and in Blackstone's Commentaries, vol. 3, p. 408, the result of which is to show that at an early day the English courts exercised this power so recklessly, when the pleadings were all *ore tenus*, and great liberality was necessarily allowed in amendments, that the abuse was corrected by the king, who made the declaration that "although we have granted to our justices to make record of pleas pleaded before them, yet we will not that their own records shall be a warranty for their own wrong, nor that they may rase their rolls, nor amend them, nor record them contrary to their original enrolment." This, Blackstone declares, meant only that the justices should not by their own private rasure change a record already made up, or alter the truth to any sinister purpose.

In the Minnesota case, the plaintiff in error had been con-

victed of the crime of murder, and after trial and verdict, and after the case had been carried to the Supreme Court of the State, the record of the proceedings on the trial was amended so as to show affirmatively that each juror was sworn as prescribed by law; that they were put in charge of the officer to keep them as prescribed by law; and that they were polled at the request of defendant on their coming in with their verdict; matters which, it seems, had been omitted in the record of the judgment. The Supreme Court in that case, as we think, stated with force and precision the true rule on this subject. They said: " While we should go as far as any court in reprobating a rule to place the proceedings of a court almost entirely at the. mercy of the subordinate officials thereof, we should be scrupulously careful in adopting any rule which would tend to destroy the sanctity or lessen the verity of the records. And while we admit the power to amend a record after the term has passed in which the record was made up, we deprecate the exercise of the power in any case where there was the least room for doubt about the facts upon which the amendment was sought to be made. . . . . But when the facts stand undisputed, and the. objection is based upon the technical point alone that the term is passed at which the record was made up, it would be doing violence to the spirit which pervades the administration of justice in the present age to sustain it. It is our opinion that this power, of necessity, exists in the District Court, and that its exercise must in a great measure be governed by the facts of each case."

The case in 5 Iredell, although a civil suit, established the doctrine that a court has a right to amend the records of any preceding term by inserting what had been omitted either by the act of the court or clerk, and that when so amended it stands as if it had never been defective, or as if the entries had been made at the proper time.

The case of *Hyde* v. *Curling*, 10 Missouri, 227, which was also a civil suit, and seems to have been very well considered, is thus stated in the syllabus of the report: " A court has power to order entries of proceedings had by the court at a previous term to be made *nunc pro tunc*, but where the court

has omitted to make an order which it might or ought to have made, it cannot at a subsequent term be made *nunc pro tunc.*" In the case in 18 Missouri, of *State* v. *Clark,* it appeared that the prisoner had been tried on an indictment which was not signed at the time of the trial by the foreman as a true bill and that the clerk had not marked the time of filing the same, on the indictment. It was held, on writ of error to the Supreme Court, that the court had a right, on motion at a subsequent term, to amend its record by a statement of these facts, not only by the endorsement upon the bill, but by a regular entry on the journal, that "the grand jury returned into court the following true bills of indictment," (naming the one under which the defendant was convicted). The court said that, if these acts had taken place, the failure of the clerk to make proper and formal entries on the records of the court might have been supplied or corrected by having such entries made *nunc pro tunc.*

In *Nelson* v. *Barker,* 3 McLean, 379, Mr. Justice McLean observed, in regard to an amendment of a declaration under a plea of misnomer, that it was objected to on the ground that there was nothing to amend by, to which he replied that at common law the court could only give leave to amend when there was something to amend by, and anciently amendments were required to be made at the term at which the error occurred, but now an amendment may be made at any time before judgment, and in some cases after judgment; and he refers to the 32d section of the Judiciary Act of 1789.

This, which has been commonly called the statute of jeofails and amendments of the United States, may be found in section 954, Revised Statutes, and is as liberal in the powers which it confers on the courts to make amendments as any of those enacted in more modern times. We are forced to the conclusion that the action of the Circuit Court in making the order for a *nunc pro tunc* record, which showed that the case had been remanded from that court to the District Court prior to the time when the sentence was passed upon the prisoner, was a legitimate exercise of power.

With regard to the proposition which denies that the indict-

ment in the District Court and the evidence by which it is sustained conferred jurisdiction on that court, we do not think it needs much comment. The grand jurors charged in the first count of this indictment that "the said Wight, who was then and there a person employed in one of the departments of the postal service of the United States, to wit, employed as an assistant to the superintendent of letter carriers in the post-office at Detroit aforesaid, unlawfully and wrongfully did secrete and embezzle a letter which came into his possession in the regular course of his official duties, and which was intended to be carried by a letter carrier, which letter then and there contained five pecuniary obligations and securities of the government of the United States," and were the property of one Angus M. Smith, and with the letter were then and there enclosed in an envelope addressed to "Oscar Singleton, Montevideo, Cook Co., Mich." A similar statement is in effect made in all the other counts.

The law under which the prisoner was indicted is section 5467 of the Revised Statutes of the United States, the language of which, applicable to the case, is as follows:

"Any person employed in any department of the postal service who shall secrete or embezzle or destroy any letter, packet, bag, or mail of letters intrusted to him, or which shall come into his possession, and which was intended to be conveyed by mail, or carried or delivered by any mail-carrier, mail-messenger, route-agent, letter-carrier, or other person employed in any department of the postal service, or forwarded through or delivered from any post-office or branch post-office established by authority of the Postmaster General, and which shall contain any note, bond, draft, check, warrant, revenue stamp, postage-stamp, stamped envelope, postal-card, money-order, certificate of stock, or other pecuniary obligation or security of the Government, . . . any such person who shall steal or take any of the things aforesaid out of any letter, packet, bag, or mail of letters which shall have come into his possession, either in the regular course of his official duties or in any other manner whatever, and provided the same shall not have been delivered to the party to whom it is directed,

shall be punishable by imprisonment at hard labor for not less than one year nor more than five years."

The argument of counsel assumes that in this proceeding, by writ of *habeas corpus*, we can inquire into and correct nearly all errors which may have been committed by the District Court in the control of the case originally. This has been so often denied by this court, and the proposition is so clear, that in a writ of *habeas corpus* nothing can be inquired into but the jurisdiction of the court, that it is unnecessary to pursue the entire line of argument of counsel for appellant. *Cuddy, Petitioner*, 131 U. S. 280. We are of opinion, notwithstanding the allegation of counsel that there was no jurisdiction because the indictment did not charge that the letter embezzled was intended to be carried by a letter carrier, that it so alleged in the exact terms of the statute just cited, and is therefore sufficient.

With regard to the proposition "that the failure to allege in some of these indictments that the letter had not been delivered to the party to whom it is directed renders the whole proceeding void," we think it is unsound. While the purpose for which this clause was inserted in the act is not very clear, it was probably intended to repel the idea that the stealing or embezzling of such a letter after it had been carried through the mail or delivered by the letter carrier to its owner and its purpose served, did not render the party guilty under this statute. At all events, the fact of its delivery being a matter of defence, when it was proved that the party in the course of his employment had embezzled the letter and stolen the money, it will be presumed that the defendant made the most he could of that defence on the trial. We are not of opinion that it is necessary for us to examine into the question raised on the evidence at the trial as to whether the securities were put into the letter and that into the mail, as a mere decoy or not. The question whether it was intended to be conveyed by the mail or by the letter carrier was a question of fact to be ascertained by the jury, and in a case like this, where the party has been convicted of embezzling a letter and valuable property in a letter passing through the regular course of the

mail and the hands of the letter carrier, where the indictment is a good one, and where the party has been found guilty and sentenced, we are not disposed to inquire into the motives for which the letter was put into the mails, even though the object was to detect or entrap the party in his criminal practices. For these reasons the judgment of the Circuit Court is *Affirmed.*

THE CHIEF JUSTICE (with whom concurred MR. JUSTICE HARLAN) dissenting.

I am compelled to withhold my assent to the conclusion reached by the court in this case. In my judgment the District Court had power after the verdict to transfer the cause to the Circuit Court, and having done so, it required an order remitting the cause from the Circuit Court to the District Court, before the latter court could pronounce a lawful sentence. The petitioner was sentenced by the District Court, which, as the record then stood, had no jurisdiction, and was committed accordingly, and while undergoing imprisonment under that sentence sued out the writ of *habeas corpus.* The Circuit Court then entered an order *nunc pro tunc* as of the previous term, remitting the cause into the District Court, basing its action upon "its recollection of the facts of the making of said order." The record before us does not disclose the existence of any minutes of the clerk or notes of the judge that the entry of such an order had been directed, or of any other official evidence to that effect, and I do not understand it to be contended that there was any such. Granting that, as has been said, the judge during the term is a living record, and may alter and supply from memory any order, judgment or decree which has been pronounced, and this, because he is presumed to retain his own action in his recollection; yet after the term has elapsed, the exercise of such a power to the extent of supplying an order upon which jurisdiction depends, in the absence of any entry, minute or memorandum to proceed by, or of any statutory provision expressly allowing it, ought not to be conceded in criminal cases. The statute of amendments and jeofails has no application.

Upon this ground, my brother HARLAN and myself are of opinion that the judgment should be reversed.

MR. JUSTICE GRAY was not present at the argument of this case and took no part in its decision.