## KARRICK v. WETMORE.*

ACTIONS ON FOREIGN JUDGMENTS, PLEAS IN; DISCHARGE IN BANKRUPTCY; CONSTITUTIONAL LAW; FINAL JUDGMENTS; DISMISSAL OF CAUSE; NOTICE.

1. In a suit here on a foreign judgment rendered after a discharge in bankruptcy, the discharge cannot be properly pleaded.
2. Under the full faith and credit clause of the Constitution of the United

---

*Foreign Judgments.*—The authorities relating to the conclusiveness of a judgment rendered in a foreign country are collated in editorial notes to *Dunstan* v. *Higgins,* 20 L. R. A. 668, and *Fisher* v. *Fielding,* 32 L. R. A. 236.

States, and the comity that exists between the States, this court will
give full recognition to the judgments of the courts of the States; but
it will not recognize the authority of the court of any State, to render
judgment against a citizen without due notice to him, and will refuse
to enforce a judgment rendered under such circumstances.

3. While a judgment of dismissal, not being rendered on the merits, is
liable to be stricken out, yet it is a final judgment which may termi-
nate the case as well as any other judgment, and in the exceptional
cases in which it may be stricken out or altered in a substantial man-
ner so as to affect the rights of the parties in whose favor it was
rendered, such action can only be taken upon due notice to such party.

4. An action here on a foreign judgment is not maintainable, the judgment
being null and void, where it appears from the record of the pro-
ceedings leading up to such judgment that it was rendered without
notice to the defendant, in place of a former apparently final judg-
ment of dismissal of the cause, which it purported to strike out, and
which was rendered five terms before, and where, while the cause
stood dismissed, the defendant had procured a final discharge in
bankruptcy in another jurisdiction, which he did not plead because
the clerk of the court informed him the suit was no longer pending.

No. 1523.   Submitted April 6, 1905.   Decided April 17, 1905.

HEARING on an appeal (specially allowed) by the defendant
from an order of the Supreme Court of the District of Colum-
bia sustaining a demurrer to a plea to a declaration on a for-
eign judgment.                                    *Reversed.*

The COURT in the opinion stated the case as follows:

A suit between the parties to the controversy now before us
was here on a former appeal and seems to have involved the
same subject-matter. It was held, in substance, that the suit,
as it then stood, could not be maintained.   22 App. D. C. 487.
That suit seems to have been thereupon abandoned, and the
present proceedings were instituted wherein very different
questions are raised.

The suit is one at common law, instituted in the supreme
court of the District of Columbia, upon a judgment recovered
by the appellee as plaintiff against the appellant, James L. Kar-
rick, as defendant in the superior court for the county of Suf-

folk, in the State of Massachusetts, on November 20, 1900, for the sum $12,881.46, besides costs, which is alleged in the declaration to remain unsatisfied. With the declaration was filed a copy of the record of the court in Massachusetts, and as the validity of this record as a basis for the present suit is here in question, it is necessary that its condition should to some extent be stated.

The suit in Massachusetts which seems to have grown out of some building contracts between the appellant and Charles H. Wetmore, deceased, the intestate of the plaintiff therein, was commenced in the year 1892 by attachment proceedings. The defendant, however, the present appellant, subsequently appeared by attorney and pleaded to the declaration. Among the pleas was one of set-off. There was then a trial by jury, who were directed to return a special verdict upon four special interrogatories framed for them. The answers of the jury to these interrogatories seem to have been unfavorable to the defendant in the cause. And yet the defendant came in and moved for judgment. The record fails to disclose what action, if any, was taken on this motion. But the next step seems to have been a motion by the defendant to set aside the special verdict, which was allowed. Thereupon the plaintiff appears to have amended his declaration by filing an additional count, and the parties went to trial again before a jury. There was another special verdict, and also a general verdict in favor of the plaintiff in the case for the sum of $9,169.39.

A motion for a new trial was made and overruled, and then the defendant, according to the record, filed "sundry exceptions to the ruling and opinion of the court in certain matters of law, which were reduced to writing." When these exceptions were filed does not appear; but presumably they were filed on or before March 5, 1894, which was the time assigned within which they were to be filed.

Nothing further seems to have been done for upwards of four years. Then, on June 8, 1897, "at a calling of the docket under the general order of court the action was dismissed." Two days afterwards, on June 10, 1897, the order of dismissal was

stricken out and the cause restored to the calendar. A very short time after this, on June 28, 1897, the attorney for the defendant entered an order withdrawing his appearance. There would seem to have been a substitution of attorneys, for the next step that appears in the record is on June 13, 1898, when another attorney, whose name appears nowhere else in the record, also withdrew his appearance for the defendant. Immediately thereafter appears the following entry:

"Thence the case was continued to the July sitting, 1898, when said exceptions, having been presented to the court, were disallowed as not conformable to the truth, the bill not properly and correctly stating the evidence so as to fairly present the questions of law raised by the defendant's exceptions.

"Thence the case was continued from sitting to sitting into the April sitting, 1899, when on the 12th day of June, 1899, at a calling of the docket under the general order of court, said action was dismissed.

"And now at this present October sitting, 1900, to wit, on the 18th day of said October, 1900, said dismissal is stricken off and the case brought forward, the same having been dismissed improvidently, action having been taken within one year, but not discovered."

Then, on November 17, 1900, there was a motion by the plaintiff for the entry of judgment on the verdict of the jury; and judgment was accordingly entered on November 20, 1900, against the defendant for the sum of $12,881.46, and costs of suit, with award of execution.

It is upon this record that the present proceedings were instituted in this District.

The defendant filed two pleas: (1) The general issue of *nul tiel* record; and (2) a special plea, wherein he set forth that, on June 12, 1899, the cause against him in Massachusetts was dismissed; that, under the rules of the court, that dismissal became final on the first Monday of July, 1899; that the cause remained so dismissed for more than five terms of the court, until October 18, 1900; that in the meantime, on April 29, 1899, the defendant filed his petition in bankruptcy in the dis-

trict court of the United States for the district of Colorado, in which in his schedule he enumerated the debt due to said Charles H. Wetmore, and was by the said district court, on June 23, 1899, discharged from all debts provable against him in bankruptcy, wherein was included the debt here sued on; that subsequently to his discharge in bankruptcy, and while the suit in Massachusetts stood dismissed as aforesaid, he made inquiry of the clerk of that court as to the condition of the suit and was informed that the same was no longer pending; that, relying upon this statement, he took no steps in that court to suggest his discharge in bankruptcy; that the action in Massachusetts was sought to be restored to the docket of the court in that State, *"without summons, citation, or notice* of any kind to the defendant, or to anyone for him, and without his knowledge;" and that the court had no jurisdiction in the premises to render such judgment.

There was joinder of issue by the plaintiff on the defendant's first plea, and a demurrer to the second; and the demurrer was sustained by the court below. From the order sustaining the demurrer the defendant has been allowed a special appeal to this court; and the cause is now before us on this special appeal.

*Messrs. Millan & Smith* and *Mr. J. J. Darlington* for the appellant.

*Mr. Wm. L. Ford,* for the appellee:

1. The jurisdiction of the Massachusetts court over the original suit and the parties thereto, and the power of that court to render the judgment sued on here, were in no way affected by the institution of the bankruptcy proceedings by the defendant, his adjudication as a bankrupt, and his discharge prior to the rendition of said judgment by said court. *Eyster* v. *Gaff,* 91 U. S. 521; *Scott* v. *Ellery,* 142 U. S. 381; *Davis* v. *Friedlander,* 104 U. S. 570; *Hill* v. *Harding,* 107 U. S. 631; *Dimock* v. *Revere Copper Co.* 117 U. S. 559; *Boynton* v. *Ball,*

121 U. S. 457; *Re Davis,* 1 Sawy. 260; *Mitchell* v. *McClure,* 1 A. B. R. 56.

2. The defendant's discharge in bankruptcy, having been granted before the rendition of the judgment sued on here, does not constitute a defense, and cannot properly be pleaded as a defense to *this action.* *Revere Copper Co.* v. *Dimock,* 90 N. Y. 33, 117 U. S. 559; *Mechanics' Bank* v. *Hazard,* 9 Johns. 392; *Desobry* v. *Morange,* 18 Johns. 336; *Steward* v. *Green,* 11 Paige, 534; *Rudge* v. *Rundle,* 1 Thomp. & C. 649; *Hollister* v. *Abbott,* 31 N. H. 442; *Bellamy* v. *Woodson,* 4 Ga. 175; *Wilkins* v. *Warren,* 27 Me. 438; *Rees* v. *Butler,* 18 Mo. 173.

3. The judgment of dismissal having been entered improvidently and through a mistake of fact, the Massachusetts court was not thereby deprived of jurisdiction, and had the power to vacate the dismissal and restore the case to the docket after the term. See *The Palmyra,* 12 Wheat. 1. A case which may be cited against *The Palmyra Case* is that of *Rice* v. *Minnesota & N. W. R. Co.* 21 How. 82. *The Palmyra Case* was not overruled, nor was its reasoning questioned, but it was held not applicable to writs of error. Besides, it will be seen by the case of *Alviso* v. *United States,* 6 Wall. 457 (a later case), that the Supreme Court expressly followed *The Palmyra Case* and commented upon it with approval. See also *Chambers* v. *Hodges,* 3 Tex. 529. In almost every case in which the rule is laid down that judgments cannot be vacated after the term, judgments of dismissal by mistake are excepted. See *Phillips* v. *Negeley,* 117 U. S. 665; *Mason* v. *Pearson,* 118 Mass. 61; *Wood* v. *Payea,* 138 Mass. 62; *Capen* v. *Stoughton,* 16 Gray, 364; *Murray* v. *Derrick,* 101 Ga. 113; *Portis* v. *Talbott,* 33 Ark. 218.

4. The judgment of dismissal being irregular and entered contrary to the practice of the Massachusetts court, that court had the power to set aside said dismissal and to reinstate the cause, notwithstanding the expiration of the term. 1 Tidd, Pr. 512; *Dick* v. *McLaurin,* 63 N. C. 185; *Wolfe* v. *Davis,* 74 N. C. 597; *Stacker* v. *Cooper Circuit Court,* 25 Mo. 401; *Hunt* v. *Yeatman,* 3 Ohio, 16; Black, Judgm. sec. 326; *Critchfield* v.

*Porter,* 3 Ohio, 518; *Shelton* v. *Gill,* 11 Ohio, 419; *Abernethy* v. *Latimore,* 19 Ohio, 288; *Philipps* v. *Hawley,* 6 Johns. 129; *Morgan* v. *Dyer,* 9 Johns. 255; *Gibson* v. *Chouteau,* 45 Mo. 173.

5. No notice is required to vacate an irregular judgment at a subsequent term of the court. *Nave* y. *Todd,* 83 Mo. 601.

6. The judgment of dismissal was based upon a mere clerical mistake of the clerk, or, at the most, upon a clerical mistake of the judge, and a judgment so founded can be vacated at any time and without notice. See *Phillips* v. *Negeley,* 117 U. S. 665; *Sibbald* v. *United States,* 12 Pet. 488; *The Palmyra,* 12 Wheat. 1; 17 Enc. Pl. & Pr. 920 and 17 Am. & Eng. Enc. Law, 2d ed. 818–822; *Balch* v. *Shaw,* 7 Cush. 282, 284; *Emery* v. *Berry,* 28 N. H. 473; *Emery* v. *Whitwell,* 6 Mich. 474. Clerical mistakes of the judge stand on the same footing as those of the clerk. Black, Judgm. sec. 328; *Chase* v. *Whitten,* 62 Minn. 498; *Morrison* v. *Stewart,* 21 Ill. App. 113.

7. The defendant was not entitled to notice of the vacation of the dismissal and the reinstatement of the original suit to the docket of the Massachusetts court, the said suit having been inadvertently dismissed through a mistake of fact, and reinstated on the docket by said court for reasons apparent of record, no new thing having been brought before the court; and, even if notice was required, the absence of it affords no ground for assailing the judgment in a collateral proceeding, such as the present one. *Odell* v. *Reynolds,* 70 Fed. 656; *Wight's Case,* 134 U. S. 136; Black, Judgm. sec. 134; Freeman, Judgm. sec. 142; *Emery* v. *Whitwell,* 6 Mich. 474; *Nave* v. *Todd,* 83 Mo. 601; *Emery* v. *Berry,* 28 N. H. 473; *Rhoads* v. *Commonwealth,* 15 Pa. 276; *Thompson* v. *Tolmie,* 2 Pet. 157; *Morse* v. *Presby,* 25 N. H. 303; *Walden* v. *Craig,* 14 Pet. 147; *Selders* v. *Boyle,* 5 Kan. App. 455; *Davis* v. *Wade,* 58 Mo. App. 641; *Mann* v. *Schroer,* 50 Mo. 306; *Odell* v. *Reynolds,* 70 Fed. 656; 17 Am. & Eng. Enc. Law, 2d ed. p. 823.

Mr. Justice MORRIS delivered the opinion of the Court:

The question in this case is whether a judgment of dismissal, on its face apparently a final disposition of the cause in which it was rendered, can, after the lapse of five terms of the court by which it was rendered, be stricken out without notice to the defendant, and a judgment rendered in the place of it, equally without notice to the defendant, in favor of the plaintiff and for the full amount of the latter's claim. And this question, we think, on the plainest principles of justice, whatever may have been the merit of the plaintiff's claim, must be resolved in the negative.

The right to be heard is a fundamental right of every litigant under our system of jurisprudence, and under every system of jurisprudence worthy of the name; and usually it is not denied even in the lawless codes of the most lawless savages; and in the right to be heard the first element is that of notice. The service of process, in other words, notice, is the essential prerequisite to the exercise of jurisdiction by any court. Indeed, it may be said that, strictly speaking, not a single step from the beginning to the end of a legal controversy can be taken without notice to the opposing party; although, of necessity, the notice in many instances is constructive, rather than actual, and the absence of it is an irregularity rather than a defect that would operate to cause a failure of jurisdiction. These are fundamental principles of the law which cannot reasonably be controverted; and yet, if we give effect to the contentions of the appellee in the case now before us, it cannot be without serious derogation of those principles.

As appears from the record of the court of Massachusetts, the appellant here was the defendant in a suit in that court. That suit, after many vicissitudes, resulted in a judgment of dismissal, upon the ground that there had been no prosecution of the cause for twelve months previously thereto, which was a good ground for dismissal, under the rules and practice of the court. There would appear, however, to have been some mistake in the matter, and that there had been some action within

the previous year. This was on June 12, 1899. Before this order of dismissal, and while the suit was in a state of abeyance, the appellant had instituted proceedings in bankruptcy in the district court of the United States for the district of Colorado (on April 29, 1899), for the purpose of being discharged from his debts under the bankruptcy laws of the United States, and had in his schedule of indebtedness enumerated the claim for the enforcement of which the suit in Massachusetts had been prosecuted. On June 23, 1899, he received his discharge in bankruptcy. This was eleven days after the dismissal of the suit in Massachusetts, of which he seems to have had no notice. But immediately after his discharge, with the view of pleading such discharge as a bar to further proceedings in the Massachusetts court, he applied to the clerk of that court to ascertain the condition of the suit there, and was informed, and very truly informed, that there was no suit then pending in that court against him, and that the suit which had been pending against him had been dismissed.

Now, whatever may have been the cause of the dismissal of that suit, whether it was due to a mistake of fact or to a mistake of law, or whatever was the reason for it, as long as it was not done by the fraud of the appellant, which is not pretended, the appellant, under the circumstances, had the right to rely upon it and to rest secure upon its validity. If the dismissal was improper it was not for him to take any steps to correct the impropriety. There was no obligation upon him to move to have the dismissal stricken out, even to give him an opportunity to plead his discharge in bankruptcy. He was entitled to rest upon the record as he found it, and to assume that the cause was at an end. And even if he was chargeable with a knowledge of the infirmity of the judgment of dismissal as having been based upon a mistake of fact, he was entitled to assume that he would be duly notified of any attempt to correct the error. It would certainly be most unreasonable to hold that he was bound to incessant vigilance to see that no step was taken in the matter without his cognizance of the fact. And when it is remembered that, whatever may have been the merit of the original

claim against him, and whatever may have been the demerit of his original defense, he had by his discharge in bankruptcy become entitled to a prima facie perfect defense which would or at least might have precluded the entry of any judgment against him, as would a plea of payment *puis darrein continuance,* if supported by proof, it will be apparent what great injustice could be and was done in this cause by the failure of notice to him of an attempt to convert a judgment in his favor to a judgment against him.

It seems to be conceded that, under the circumstances, only in the suit in Massachusetts could the discharge in bankruptcy have been properly .pleaded. It cannot be pleaded in the proceedings in this District, for the reason that what purports to be the final judgment of the court in Massachusetts, upon which the present proceedings are based, was rendered after the discharge in bankruptcy. *Dimock* v. *Revere Copper Co.* 117 U. S. 559, 29 L. ed. 994, 6 Sup. Ct. Rep. 855. But the appellant proposed to plead it, where it was properly pleadable, in the original suit in Massachusetts; and it may be assumed that he would have done so if the opportunity to do so had been afforded to him by proper notice that the judgment of dismissal would be stricken out. It seems to be assumed by the appellee that the appellant had lost his right to plead his discharge in bankruptcy by his failure, upon the filing of his petition in bankruptcy, to ask for a stay of proceedings in the Massachusetts court. But this proposition is wholly untenable. It was his privilege to ask for a stay of proceedings, if he so desired; but if he assumed that no judgment would be rendered in that court before his discharge in bankruptcy, and that he would have ample time before the final judgment therein to introduce into the suit the defense of his discharge, he was at perfect liberty to do so. In fact, the proceedings in the Massachusetts court seem to have been stayed during nearly the whole time of the proceedings in bankruptcy, and for about two years previously thereto; for the record fails to show that anything whatever was done in the cause in the Massachusetts court between June 10, 1897, when a previous judgment of dismissal was stricken out, and June

12, 1899, when the second judgment of dismissal was entered, except the withdrawal of the defendant's attorneys and the disallowance of the defendant's exceptions at the July term of 1898. Moreover, the only action taken by the court in Massachusetts during the pendency of the bankruptcy proceedings, that is, between April 26, 1899, and June 23, 1899, was the very dismissal complained of by the appellee, on June 12, 1899, which was a most effectual stay of proceedings.

It is plainly apparent therefore, from the record before us, that the appellant was entitled at any time after June 23, 1899, to go into the court in Massachusetts and there plead his discharge in bankruptcy as a bar to any recovery there against him, if any suit was then pending; that there was no suit then pending in that court; that, when it was sought to revive that suit by striking out the judgment of dismissal, it would have been competent for him then to plead his discharge, if he had the opportunity; that he was deprived of that opportunity by the failure to give him notice, and that thereby he lost a most valuable right. No case can well be supposed which more forcibly illustrates the propriety of giving notice or the gross injustice that may follow from failure to give it. Assuredly it cannot be that the law will sanction such a proceeding.

We need not decide the question whether the court in Massachusetts had the authority, after the lapse of five terms of that court, to strike out a judgment of dismissal, and to enter a final judgment in favor of the plaintiff. We will assume that it had full power and authority so to do under its rules of practice and under the laws of that State. The full faith and credit equired by our Federal Constitution, and the comity that exists between the States, to be given by the courts of one State to the judgments and decrees of the courts of other States, we are disposed to accord even to a greater extent than we might do to the courts of our own jurisdiction, for the reason that many concessions are to be made to difference of practice and difference of statutory law; but in no court of any jurisdiction can we recognize the authority to render judgment against individual citizens without due notice to them, and it is conceded that

in the present instance there was no notice of any kind to the appellant or to anyone for him of the intended action of the court. It is alleged in the appellant's plea, and it is admitted by the demurrer, that there was absolutely no notice of any kind to the appellant.

In order to maintain the validity of the judgment upon which he sues, the appellee is driven to the necessity of arguing that no notice was required, that the parties were in court, and that the court had jurisdiction over them and over the subject-matter. But the plain answer to this is that the defendant was not in court. He had been dismissed from court without day, and was no longer required to take notice of its proceedings. It is absurd to argue that he must be regarded as cognizant of the mistake under which the judgment of dismissal was rendered; that he must be held to know that such judgment was liable to be stricken out; and that therefore he was constructively retained in court for an indefinite time, and until the plaintiff thought proper to move in the matter and have the judgment stricken out. This contention, if sustained, would render judgments of dismissal useless and of no value; and yet undoubtedly a judgment of dismissal is as good as any other judgment as long as it stands, and parties are entitled to act upon the faith of it as a valid judgment. It is true that judgments of dismissal, not being rendered upon the merits, are liable to be stricken out; and yet they are final judgments and may terminate the litigation, as well as any other judgment. It may not be disturbed any more than a judgment upon the merits after the lapse of the term at which it was rendered. *Bronson* v. *Schulten,* 104 U. S. 410, 26 L. ed. 797; *Phillips* v. *Negeley,* 117 U. S. 665, 29 L. ed. 1013, 6 Sup. Ct. Rep. 901.

In these two cases it is shown that there are certain exceptions to the general rule, which may be reduced to three classes: (1) Cases of clerical misprision, as when the judgment rendered was not entered correctly by the clerk; (2) cases of mistakes of fact, such as that one of the parties to the judgment had died before its rendition, or was an infant, or a *feme covert,* or the like, which errors were formerly corrected at the common law

by writ of error *coram nobis;* (3) cases in which a bill in equity will lie to prevent the execution of an erroneous or inequitable judgment.

Now here there was no clerical misprision. The judgment entered was the judgment actually rendered and which was intended to be rendered. It is true there was a mistake of fact, as we may assume, but that does not make the judgment a clerical error, but an erroneous judgment, such as might result from a mistaken understanding of testimony. It falls, if at all, within one of the other two classes. But this does not help the case of the appellee. For while in modern practice the writ of error *coram nobis* has fallen into disuse, and relief is afforded upon motion supported by affidavits, and while under statutory provisions, as in Massachusetts, relief by motion is also to a limited extent substituted for bill in equity, yet, as both the writ of error *coram nobis* and bill in equity cannot be entertained without service of process, so a motion to serve the same purpose must likewise be based upon notice. Notice is as requisite to jurisdiction in the one case as in the other, and the fact that the method of relief is more summary does not in any manner diminish the necessity for its requirement.

Certain cases are cited on behalf of the appellee as tending to support his proposition that a court may, without notice to the party to be affected thereby, set aside a judgment after the term at which it was rendered, and enter a new and radically different judgment. These are *Walden* v. *Craig,* 14 Pet. 147, 10 L. ed. 393; *Odell* v. *Reynolds,* 17 C. C. A. 317, 37 U. S. App. 447, 70 Fed. 656; *Emery* v. *Whitwell,* 6 Mich. 474; *Nave* v. *Todd,* 83 Mo. 601; *Mann* v. *Schroer,* 50 Mo. 306; *Davis* v. *Wade,* 58 Mo. App. 641; *Emery* v. *Berry,* 28 N. H. 473, 61 Am. Dec. 622; Black, Judgm. sec. 134; Freeman, Judgm. sec. 142; 17 Am. & Eng. Enc. Law, 2d ed. p. 823. But upon careful examination of these authorities it will be found that in no one of them was the case presented which is now before us, and that the mistakes corrected were mistakes of a clerical nature, apparent on the record.

The case of *Walden* v. *Craig,* 14 Pet. 147, 10 L. ed. 393,

merely held that parties were, under the law of the State of Kentucky, to be regarded as continuing in court for the purpose of carrying a judgment into effect. But this is a very different proposition from that of wholly invalidating a judgment and converting it into an adverse decision.

The case of *Odell* v. *Reynolds* is apparently more to the point, but only apparently so. A very brief statement of it will be amply sufficient, notwithstanding the somewhat broad language of the opinion, to show that it is no authority whatever for the proposition advanced on behalf of the appellee in the present case.

In that case a judgment by confession had been entered in the superior court of Cook county, in the State of Illinois, for the sum of $25,000, on account of several promissory notes held by the plaintiff and aggregating that amount. The entry of the judgment was on April 18, 1892, and the confession purported to be by a certain person named as "the attorney in fact" for the defendant, and to be an account of "the note filed in the case." There were two defects in the judgment. One was to the effect that the statute law of Illinois forbade the appearance of anyone as an attorney in fact to confess judgment, unless he was an attorney at law. The person who had confessed the judgment was in fact an attorney at law; but that fact did not appear affirmatively upon the record, although it was ascertainable from the rolls of the court. Another defect was that the word "note" was used in the singular number, indicating that only one note for the sum of $25,000 had been filed, while in fact several notes had been filed of the aggregate amount of $25,000. On February 26, 1893, after the term had expired at which the judgment had been rendered, motion was made to correct it. Whether this motion was made upon notice or without it, the statement of the case does not show. From the opinion in the case of *Odell* v. *Reynolds* it may be conjectured that it was without notice. The motion was allowed, and the judgment was corrected. Subsequently suit was instituted upon it in the Federal district court; and there were pleas filed by the defendant, one of them setting forth the insanity of the defendant at the

time the judgment was rendered, another to the effect that the judgment had been altered without authority on the part of the court of Cook county so to do, after the lapse of the term. This suit found its way to the circuit court of appeals for the sixth circuit, and that court sustained the authority of the Cook county court to correct its judgment.

Assuredly there is nothing in the facts of this case that would justify the contention of the appellee in the case now before us. In that case there was no substantial change whatever in the new judgment that was entered. Indeed, from our standpoint the changes might be regarded as wholly superfluous. The original judgment was against the defendant for $25,000; the corrected judgment was one against the defendant for $25,000. It was of no real consequence whether the claim was upon one note for $25,000 or upon several notes aggregating that sum, or whether it appeared upon the record that the attorney in fact was an attorney at law; and we fail to see how, upon the authority of such a case as this, the action can be vindicated which would convert, without notice to the party to be affected thereby, a judgment of dismissal in his favor to a judgment against him for upwards of $12,000.

It is upon the reasoning of the case, however, and not upon the facts of it, that the appellee seeks to justify himself; but no more upon the reasoning than upon the facts can he support his contention, for the opinion of the court distinctly and explicitly states the limitations upon the course of procedure which it sanctioned, and which no doubt is entirely correct within these limitations. As the case of *Odell* v. *Reynolds* is the only case that has been cited which treats this subject at any length from the apparent standpoint of the appellee, and the subject is a grave one in the administration of justice, we are at pains to transcribe so much of the opinion in that case as seems to be pertinent to the issue before us. The court there said:

"The first question to which we shall give attention arises upon the objection of the defendant to the entry made by the superior court for Cook county, on the 26th day of February, 1893, in correction and amendment of the judgment it had

rendered on the 18th day of April, 1892. The grounds of that objection, as stated by counsel for defendant in error in argument, are: (1) That the court had no power to make the order, for the reason that the term at which the judgment was rendered had expired; and (2) that the order was made without any notice to the defendant of the proposed action and without his knowledge. * * * On the contrary, it is a power inherent in the authority of every court having general jurisdiction, to correct errors in the making up of its records, whereby they fail to express the truth in regard to its proceedings. And this power may be exercised by the court at any time when the error is brought to its attention, *and no injury is likely to happen to the parties or other persons by its exercise.* No doubt such power should be cautiously and discreetly used, but that it exists is well established by authority. It is the settled doctrine of the English courts, and in most of the courts of this country. * * * In the present case counsel for the defendant submits as a vital objection to the action of the Illinois court in making the entry for correction of February 26, 1893, that 'to make that finding and insert it in the judgment *nunc pro tunc* was to materially add to and substantially modify the judgment that was rendered at the prior term; for it involved the very character and scope of the agency to which alone Reynolds had committed the right to enter his appearance and confess judgment.' But the consequence of the correction is no test of the power of the court to make it. In *Re Wight (Wight v. Nicholson)* 134 U. S. 136, 33 L. ed. 865, 10 Sup. Ct. Rep. 487, just cited, the effect of the entry was to annihilate the whole foundation on which his petition rested. * * * Sometimes the propriety of such action exists in cases where the correction may be made upon that which appears in the record itself, and is necessary to make it consistent and harmonious one part with another. In other cases it is necessary in the interest of justice to act upon matters not appearing from the record; for example, things resting in the recollection of the judge, or evidence adduced *aliunde.* In the former case notice to the parties is not necessary. No new thing is brought upon

the record. The court, for the clearer and more accurate expression of its final action, molds into form that which is fairly and reasonably deducible from the whole record, taken together. There is nothing to litigate. *No right is substantially affected.* Freeman, Judgm. sec. 72a; 1 Black, Judgm. sec. 164; *Emery* v. *Whitwell,* 28 N. H. 473, 61 Am. Dec. 622; *Murphy* v. *Stewart,* 2 How. 263, 11 L. ed. 261. In the latter case the question of the necessity of notice may depend upon the source from which the evidence comes upon which the action is to be taken. If it is the recollection of the court, it is doubtful whether notice is required, for the reason that it is not open to contest. At all events, it would seem upon the authorities that corrections of the record made by the court upon its own recollection would not be collaterally assailable, though made without notice."

We have underlined certain phrases in this opinion which clearly show the limitation within which it was intended to be restricted. The opinion is plainly unexceptionable as applied to the facts of the case which was before the court; but it is equally plain that the ruling of the court was not intended to extend to cases, *where any right was to be substantially affected, or where any of the parties were likely to be injured by the proposed correction.* Now it is difficult to conceive of any case where a right was more substantially affected, or where one of the parties to the cause was more seriously injured, than the case now before us.

The case of *Re Wight* (*Wight* v. *Nicholson*) 134 U. S. 136, 33 L. ed. 865, 10 Sup. Ct. Rep. 487, is also cited by the appellee as sustaining his contention that he was entitled to proceed without notice. But we fail to see wherein that case supports him. There it appeared that one Wight, who petitioned to be released on habeas corpus, had been indicted and convicted in a district court of the United States for a criminal offense. He made a motion for a new trial and in arrest of judgment, and at that point the district court certified the cause to the circuit court. The circuit court overruled both motions, but failed to enter any order to remand the cause to the district

court. It is not entirely clear from the record whether the failure to enter such an order was due to oversight on the part of the clerk to note on his record the verbal order that may have been actually rendered, or resulted from the failure of the court at the time to make any order. But on the same day on which the circuit court denied the motions of the defendant, the district court again took up the case, entered an order overruling the same motions, and, putting upon record its opinion that the case had been improvidently and without authority certified to the circuit court, vacated the order of certification, and thereupon proceeded to pronounce sentence upon the defendant. The writ of habeas corpus was then sued out, and while that writ was pending it was discovered that, as already stated, no entry had been made remanding the cause from the circuit to the district court. Thereupon the circuit court corrected its record so as to provide for such an entry. The petitioner's whole case was based upon the absence of any such entry, and the consequent absence, as claimed, of jurisdiction on the part of the district court to proceed with the cause. The Supreme Court of the United States held that the correction of the record was lawful.

Now, it is quite apparent from the statement of this case, in which the district judge, who held the district court, also sat with the circuit judge in the circuit court, and both courts were held at the same time in the same court-house, that there was an *actual* remanding of the cause by the circuit to the district court; and whether the failure to enter a formal order to that effect was due to misprision of the clerk, who no doubt was the same for both courts, or, as is more likely from the circumstances, was the result of oversight on the part of the judges, or of the view evidently entertained by them, although not entertained, it would seem, by the Supreme Court of the United States, that the order of certification from the district to the circuit court was without authority of law, and void; the failure to enter an order for remanding the cause was not a jurisdictional, but a clerical, matter. It was intended simply to make a record of that which was actually done by the court, and

it did not at all materially alter the nature of the judgment that was rendered. The *Case of Wight,* therefore, is no authority for the position of the appellee in the case now before us.

Various other cases there are of a similar character, in which there has been a relaxation of the rigid rules of the common law, that judgments of a court of general jurisdiction may not be altered in any manner after the lapse of the term at which they were rendered. But it is unnecessary to consider them. The relaxation has been only to correct clerical errors, or to fill up a gap in the record when there was actually no gap in the action of the court, or in some way to make the record consistent with itself. In other words, the power of correction remaining in the court would seem to be rather of matters leading up to judgment itself. But assuming that a judgment itself might be altered in a substantial manner, by way of correction or amendment, after the lapse of the term at which it has been rendered, we find no adjudicated case, and we know of no rule of law or of reason that would justify a substantial alteration of such judgment without notice to the person to be affected thereby. Such notice is jurisdictional, and the failure to give it is not a mere irregularity to be corrected by action in the same court in the case itself, or by appeal to an appellate tribunal. Evidently in the case before us, when the defendant was advised of the action taken against him, it was too late for him to enforce his right by application to that court or by appeal, and it is absurd that he should be driven to such mode of enforcing his right. He had been dismissed from court, and he could not have been called back except by notice, which it is conceded was not given.

From what we have said it follows, in our opinion, that the action of the superior court of Suffolk county, in the State of Massachusetts, in striking out the judgment of June 12, 1899, dismissing the suit between the parties to these proceedings, and rendering on November 20, 1900, in its place and stead a new and radically different judgment for the plaintiff and against the defendant for the sum of $12,881.46, without notice

to the defendant, was without jurisdiction and was null and void. Consequently we think that it was error in the trial court to sustain the demurrer of the plaintiff to the appellant's second plea, and that the demurrer should have been overruled.

The order appealed from will be reversed, with costs; and the cause will be remanded to the supreme court of the District of Columbia, with directions to vacate such order, and to enter an order overruling the plaintiff's demurrer, with leave to the plaintiff to plead over as he may be advised upon such terms as to the court may seem proper; and for such further proceedings therein, if any, as may be right and just and according to law, and not inconsistent with this opinion. And it is so ordered.                                    *Reversed.*