## OLSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4821.

Circuit Court of Appeals, Seventh Circuit.

Nov. 3, 1933.

Rehearing Denied Jan. 8, 1934.

Louis A. Lecher, of Milwaukee, Wis., and W. W. Spalding, of Washington, D. C. (Mason, Spalding & McAtee, of Washington, D. C., of counsel), for petitioner.

Sewall Key and Francis H. Horan, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and E. A. Tonjes, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before EVANS, SPARKS, and FITZ-HENRY, Circuit Judges.

SPARKS, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals pursuant to sections 1001 and 1002 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 109, 110. USC Supp. VI, title 26, §§ 641, 642 (26 USCA §§ 1224 and note 1225). That decision affirmed a determination of the Commissioner that there was a deficiency in income tax due from petitioner for the year 1922 in the sum of $20,557.96.

There is no controversy as to the primary facts involved as they appear in the findings of fact of the Board of Tax Appeals. Petitioner is the president of the American Appraisal Company, a personal service corporation of a close character with its principal office in Milwaukee, Wisconsin. Its only business is that of making appraisals and valuations of property, and it owns no real estate. On December 31, 1922, it had a capital stock of $300,000, divided into 3,000 shares of the par value of $100 each. On March 13, 1917, its board of directors passed the following resolution:

"Resolved, that in consideration of Messrs. L. H. Olson, F. S. Olson and A. F. Bailey agreeing to remain continuously in the employ of the company, for a period of five years from March 1, 1917, their respective ledger accounts be each credited monthly with $333.33⅓ commencing with the present month.

"That, on March 1st of each year, in consideration of the total credit balance thus credited, there be issued three certificates for forty shares each, par value $100.00 per share of the capital stock of the Company, to a Trustee to be designated by Messrs. L.

H. Olson, F. S. Olson and A. F. Bailey; said certificate to be held for and on behalf of these three gentlemen.

"That all dividends which may be paid on shares as issued to the Trustee shall, immediately as such dividends are received, be assigned to Messrs. L. H. Olson, F. S. Olson and A. F. Bailey respectively, and when they respectively shall have been continuously in the employ of the Company for a period of five years, namely on March 1, 1922, said Trustee shall immediately assign all of the six hundred shares then issued, to Messrs. L. H. Olson, F. S. Olson and A. F. Bailey respectively, in equal amounts of two hundred shares each.

"In the event of the death while in the employ of the Company, of Mr. L. H. Olson, Mr. F. S. Olson or Mr. A. F. Bailey or either of them prior to March 1, 1922, said Trustee shall assign and deliver to the legal representative of the decedent, all of the shares issued in his behalf at the time of his death, subject only to provision that the shares so issued shall first be offered to the Company by the heir or heirs of the decedent before they may be sold in the open market."

In accordance with that resolution petitioner's account on the company's books was credited with $333.33 each month for two years ending April 1, 1919. In that month an account designated as O. F. Hiemke, Trustee for F. S. Olson, L. H. Olson, and A. F. Bailey, was opened on the books of the company, and thereafter, $1,000, the sum of the three credits theretofore entered on the respective accounts, was credited to the trustee account each month. This method was continued until the several transactions were completed on February 28, 1922. In order to care for the liability created by the resolution, the company charged the $1,000 to operating expenses each month during the five years. Those amounts were taken and allowed as deductions in the company's income tax returns.

On February 28, 1918, journal entries were made on the books of the company, crediting treasury stock with $12,000 and charging the account of petitioner with $4,000. On April 30, 1919, petitioner's account was charged with $4,000, and the account of the trustee credited with it. At the same time, the trustee's account was charged with that amount, and the capital stock credited with it. On February 28 of each of the years 1920, 1921, and 1922, the account of the trustee was charged with $12,000, the sum of the accounts for the three employees, and the

capital stock account was credited with $12,000. On each of the years 1918 to 1922, inclusive, three certificates for 40 shares each were issued and delivered by the company to the trustee for the three respective accounts. Dividends on the stock held by the trustee were either paid to the two Olsons and Bailey or were credited to their accounts and drawn by them at their pleasure.

On or about March 1, 1922, the original stock certificates which had been issued to the trustee were surrendered and a new stock certificate for 200 shares was issued to petitioner. This stock he included in his income tax return for that year at its par value. The respondent increased that amount to $80,000 and asserted the deficiency in controversy.

On petitioner's appeal to the Board, the action of respondent was sustained. The Board in its findings which were promulgated on November 10, 1931, stated that the fair market value of the stock was $250 a share at the time of the transfer to petitioner on March 1, 1922. In the written opinion of the Board which accompanied those findings, however, the market value was stated to be $400, and that value was used in the Board's computation of the deficiency on December 28, 1931. On December 22, 1932, respondent filed in this court a certified copy of an order of the Board, as of December 12, 1932, correcting an error in the findings by ordering the figures and words "$250 per share" deleted and substituting therefor the figures and words "$400 per share." On January 23, 1933, respondent filed a written motion in this court to the effect that the Board's order of December 12, 1932, be incorporated in this record, and that it should be heard at the time the cause was argued on the merits. The motion was presented to this court by the parties at that time.

It is first contended by petitioner that since the Board had definitely found that the stock at the time of the transfer had a fair market value of $250 per share, it was error for it to undertake, in its opinion, to deduce from the evidence that it had a fair market value of $400 per share at that time, and likewise error for it to change its original findings by the order of December 12, 1932. Petitioner therefore argues that the order should not be incorporated in this record, and respondent's motion should be denied.

In Lincoln National Bank v. Perry, 66 F. 887, the Circuit Court of Appeals in discussing the jurisdiction of the trial court to correct the record on appeal, said, at page 888,

"We are not prepared to admit that the circuit court exceeded its power, in undertaking to amend its record in the manner aforesaid, if it was satisfied that through accident or inadvertence, or a misprision of the clerk, the record did not in fact speak the truth. The power to correct mistakes in its record, occasioned by oversight, which are of such nature that the record does not show what was in fact done or decided, is a power that is inherent in all courts of superior jurisdiction, and is frequently exercised in furtherance of justice. The power in question does not extend, of course, to the correction of errors of law committed by the court, which, in all cases, must be remedied by appeal or writ of error, but is strictly limited to the correction of mistakes or misprisions of the clerk or other officers, by reason of which the record does not speak the truth, or fails to speak the whole truth."

In Wight v. Nicholson, 134 U. S. 136, 10 S. Ct. 487, 490, 33 L. Ed. 865, the court quoted with approval from the case of Bilansky v. Minnesota, 3 Minn. 427 (Gil. 313) as follows:

"And while we admit the power to amend a record after the term has passed in which the record was made up, we would deprecate the exercise of the power in any case where there was the least room for doubt about the facts upon which the amendment was sought to be made. * * * But when the facts stand undisputed, and the objection is based upon the technical point alone that the term is passed at which the record was made up, it would be doing violence to the spirit which pervades the administration of justice in the present age to sustain it. It is our opinion that this power, of necessity, exists in the district court, and that its exercise must in a great measure be governed by the facts of each case."

While the statute does not specifically fix the terms for the Board of Tax Appeals, yet the applicable statutes provide that the report of the division shall become the report of the Board within thirty days after such report by the division, unless a review is directed by the Chairman. It is therefore contended by petitioner that any modification of the report should be made within thirty days and while the report of the division is under consideration by the Board. That contention is too broad in its terms and should be qualified by the principle laid down in Wight v. Nicholson, supra. If the facts stand undisputed to the effect that there was a mistake in writing the figures, "$250" as the fair market value of each share of stock, instead of "$400," then the Board had a right to correct that error even after the thirty days had expired, and we think it can make no difference who made the mistake.

It was the duty of the Board to include in its report its findings of fact, or opinion or memorandum opinion. Section 907 (b) of Revenue Act of 1924, as amended by Revenue Act 1928, c. 852, § 601, 45 Stat. 791, 871, USC Supp. VI, title 26, § 617 (b), 26 USCA § 1219 (b). Under this section we think that a written opinion may perform the office of a finding of facts, and when both are used as was done in this case, they are to be considered together as the decision of the Board, and both may be looked to in determining what that decision is and the facts upon which it is based. See Commissioner v. Crescent Leather Co. (C. C. A.) 40 F.(2d) 833. It is immaterial whether the term "finding of facts" or "opinion" is used, or whether both are used, and if both find facts sufficient to support the decision, the decision must stand.

It is true that in what was termed the "findings of fact," the Board found that the fair market value of the stock on March 1, 1922, was $250 per share. However, there was no evidence whatever to support that valuation. The respondent had found that it was worth $400 per share, and computed the deficiency on that finding. That finding was reviewed by the Board and sustained. The opinion which was filed as a part of the Board's finding and decision stated that the evidence supported the contention of respondent that the market value of the stock at the time received by the petitioner in 1922 was at least $400 per share, and held that petitioner was liable for income tax in 1922 upon the 200 shares received in that year at the rate of $400 per share.

It is quite clear that the Board, contrary to its intention, erroneously, inserted the figure $250 instead of $400 as the value of the stock, and we think it was such an error as the Board might rectify even after its decision was filed. If the Board's order of December 12, 1932, be not incorporated in this record, the ruling of the Board would at least have to be reversed and remanded for a rehearing on the value of the stock on March 1, 1922 (section 1003 (b) Act of February 26, 1926, c. 27, 44 Stat. 110, 26 USCA § 1226 (b), because of the inconsistency of the decision as to said value, which we are convinced was occasioned merely through oversight. Remanding the cause for such purpose would no doubt accomplish the same result as per-

mitting the certified copy of the order of the Board to be incorporated in this record now, but we can see no good reason why that should be necessary. Respondent's motion to incorporate the Board's order of December 12, 1932, into this record is sustained.

The next question presented is whether there is substantial evidence in the record to support the valuation of $400 per share. The record discloses that there was a sale of some of the same stock of this company in 1921 at a price of $400 per share, and the earnings of the company in 1920 were in excess of $200 per share. The company also paid cash dividends of at least 500 per cent. over the period from 1918 to 1921, inclusive, and had profits in excess of the dividends paid. It also paid a cash dividend of 100 per cent. in 1921. This was sufficient to support the Board's finding, and petitioner's contention in this respect cannot be sustained. It is true that there was evidence introduced to the effect that the stock had no market value, but we are not permitted to weigh the evidence.

The further contention was made by petitioner that even though he received a stock certificate for 200 shares in 1922, in fact he had owned all but 40 of those shares prior to 1922 in that they had been issued to the trustee to hold for him, and the beneficial interest had been in him as soon as they were issued. However, the terms of the resolution plainly refute such contention. Moreover, petitioner is hardly in a position to urge this point in view of the fact that he himself included the entire 200 shares of stock in his income tax return for the year 1922 instead of making a return for the 40 shares issued each year from 1918 to 1922, inclusive.

The decision of the Board is affirmed.